## ADAMS v. INDUSTRIAL COMMISSION OF UTAH et al.

### No. 4365. Decided May 11, 1926. (246 P. 364).

1. MASTER AND SERVANT—SUPREME COURT WILL EXAMINE EVIDENCE ONLY TO ASCERTAIN WHETHER THERE IS ANY SUBSTANTIAL EVIDENCE TO SUPPORT FINDINGS OF INDUSTRIAL COMMISSION. In reviewing order of Industrial Commission Supreme Court will examine evidence only to ascertain whether there is any substantial evidence to support findings of commission, and whether it has acted without or in excess of, its jurisdiction.[1]

2. MASTER AND SERVANT. Evidence in compensation proceeding *held* to support finding that injury to shoulder was due to organic disease rather than to fall during course of employment.

Proceeding under the Utah Industrial Act by Rober D. Adams for compensation for injuries, opposed by American Fuel Company, employer, and the Continental Casualty Company, insurer. The Industrial Commission denied an award, and claimant brings original proceeding for review against the Industrial Commission of Utah and others.

Order denying award affirmed.

*L. A. McGee,* of Price, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, J.

On February 19, 1925, the plaintiff herein, a former employee of the defendant American Fuel Company, subject to the provisions of the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165), filed with the Industrial Commission

---

[1]*Twin Peaks Canning Co.* v. *Industrial Commission,* 57 Utah, 589, 596, 196 P. 843, 856 (20 A. L. R. 872).

Corpus Juris-Cyc. References:
[1] Workmen's Compensation Acts C. J. p. 123 n. 47.
[2] Workmen's· Compensation Acts C. J. p. 122 n. 40.

an application for compensation under said act. It is alleged in his application that on the 26th day of November, 1924, while in the course of his employment by said fuel company, he was personally injured as the result of an accident. It appears from his application that he was driving a team hauling ashes, and drove his team into an ash pit for the purpose of loading his wagon; that the team was not thoroughly broken, and commenced to run backwards as plaintiff was getting out of the wagon; that he was thrown out of the wagon, and fell on his left shoulder; that the doctor informed him the ligaments of the shoulder were torn loose, causing a shrinkage of the muscles and loss of use of the arm; that he has not been able to work since the accident; and that medical treatment was required; that he was treated by Dr. George Q. Christensen, of Sego, Utah, and Dr. F. R. King of Green River; that he was earning $7 per day at the time of the accident, working seven days a week; that he has received no compensation, and has paid out certain sums of money for medical care and other expenses.

A hearing was had at Sego, Utah, March 4, 1925, and a further hearing in Salt Lake City on April 7, 1925. Applicant was present at the first hearing, but was not present at the last one. The Continental Casualty Company, defendant and carrier of the insurance, was represented at both hearings.

After hearing the evidence the commission, on April 28, 1925, entered findings to the effect that plaintiff was afflicted with organic disease, and was not disabled as a result of the accident, and concluded therefrom that he was not entitled to compensation. An order was entered accordingly. Afterwards, on May 6, 1925, plaintiff made application for a rehearing of the case. The application was granted and a rehearing had at the capitol, Salt Lake City, and at Castle Gate, Utah. A further hearing was also had at Salt Lake City, October 13, 1925. Plaintiff was present in person, and the casualty company, by its attorney, at both hearings. After these hearings, the commission ordered that its former

decision of April 28, 1925, be not disturbed, and that compensation be denied. It is contended by plaintiff's attorney that there is no evidence to sustain the decision denying compensation. This is the only question to be determined.

In addition to evidence taken at the various hearings, the record is replete with written opinions and conclusions of medical experts who participated more or less in the case. It is impracticable to consider such evidence in detail, nor is it necessary, as we view the case. A statement of the main features must suffice. The plaintiff testified, in substance, that he was hauling ashes for the defendant fuel company at the time of the accident; that he drove into the ash pit for the purpose of loading his wagon; that, while he was stepping out of the wagon, the team started backwards, his right leg went through the wagon wheel, and he fell forward, his shoulder striking either frozen ground or a railroad rail; that some one else loaded the wagon; that it was on November 26, 1924, the day before Thanksgiving; that he laid off work until Saturady noon, then worked the afternoon, also worked Sunday and Monday; that he then quit because of the pain in his shoulder; that he has not been able to work since; that Dr. Christensen first treated him; that the doctor called on him November 29th; that he did not at that time tell the doctor about his shoulder because his right leg was hurting him more. Plaintiff was in a stage of gonorrhea, and so informed the doctor, who gave him some tablets to relieve the pain. Dr. Christensen treated him until some time in January, 1925. He then went to Green River, and was there treated by Dr. F. R. King. He afterwards went to Salt Lake City, under the advice of Dr. Fiske of Price, and had X-rays taken by Dr. Kirby under the direction of Dr. Kerr. He had not been able to raise his arm except at the elbow since the accident. He first told Dr. Christensen of the injury to his shoulder about December 5, 1924. Dr. Christensen had treated him for gonorrhea previous to the accident. Dr. Allen also came to see him while Dr. Christensen was treating him. Dr. Kerr recommended that

he go to a hospital. Plaintiff's wife left him about December 6th, and went to Price. She later took the furniture away. He then went to his mother's home at Green River, and she cared for him. He has eight children, all living with their mother.

Two or three other witnesses saw plaintiff fall from the wagon. They thought he fell on his right shoulder, or right side. It appears without contradiction that plaintiff worked regularly prior to the accident, and that his work was satisfactory.

Dr. Christensen, a witness for the fuel company, testified that he first examined plaintiff November 29, 1924; that plaintiff complained of being afflicted with gonorrhea; and that was his main complaint; that he had a painful condition of his right shoulder; that witness gave him tablets to ease the pain; that he saw plaintiff a few days later; that his right shoulder was then practically all right, but that he complained of severe pain in his left shoulder; that plaintiff told witness for the first time he had fallen from a wagon and hurt his left shoulder; that witness did not then consider it was an industrial case, in order to be sure, he afterwards made out the report to be safe; that he told plaintiff he might have had a strain of the shoulder, but he thought it was due to gonorrhea rheumatism; and that he still thought so. Witness was shown some X-ray pictures, and stated he could see no evidence of fracture. He stated that he had examined plaintiff several times, and had called in Dr. Allen, who also examined plaintiff. Witness thought that, if plaintiff received an injury, as stated by him, it might aggravate the gonorrheal rheumatism if it got in the blood.

Dr. Allen testified he examined plaintiff in December, 1924, at his home in Sego; that Dr. Christensen was there; that he found no deformities, and very little swelling, if any; that he found points of tenderness over the left shoulder joint; that he got the history of the man; that he made no

definite diagnosis, but from his examination and the history of the man he was of opinion that plaintiff was suffering from gonorrheal arthritis. Witness found no evidence of fracture. He was shown X-ray pictures of the shoulder condition, and thought gonorrheal arthritis would cause such condition. He thought it would be possible, and even probable, that, if plaintiff fell on his left shoulder, it would have a tendency to aggravate the condition found in the shoulder. Witness saw nothing in the X-ray indicating that plaintiff had sustained an injury that would accelerate an old latent gonorrheal condition; saw nothing that would indicate plaintiff had received an injury.

Dr. F. R. King testified that he treated plaintiff; that he saw him five or six times, the last time in February, 1925; that he prescribed for him for what he considered to be gonorrheal rheumatism in his left shoulder and arm above the elbow; that plaintiff also complained of some pain in his chest; that plaintiff gave witness a history of the accident and also of the gonorrhea; that plaintiff said the gonorrhea stopped before the accident; that witness concluded plaintiff's case was due to gonorrheal infection, gonorrheal arthritis; that there was no swelling about the shoulder joint; that it was the reverse—atrophy of the muscles; that he prescribed, for gonorrheal arthritis, gonorrheal antitoxin, a new remedy.

Mrs. Adams, wife of plaintiff, testified on behalf of the casualty company. She testified that she had been married to plaintiff 18 years and had eight children, all of them living with her; that she lived at Price, Utah; that she was not living with plaintiff then; that she was living with him about November 28, 1924; that he told her he fell from the wagon and hurt his leg and right shoulder; that she soaked his feet, and rubbed his leg and right shoulder; that he complained of being sore; that he did not complain of his left shoulder until about December 2nd; that she lived with him until about December 5th, and then left him because he was mean to her; that he whipped her and abused her; that on October

29th he could not raise his right arm, and fed himself with his left arm.

George Brundag, sworn as a witness for the casualty company, testified that he lived at Price; was acquainted with plaintiff; was working for the fuel company; that he saw plaintiff on the day of the accident when he came home "packing his right arm;" that plaintiff said he fell off the wagon on his right shoulder and hurt his shoulder and leg.

Mrs. Nellie Brundag, wife of the last witness, testified that she knew plaintiff; that she recalled the incident of his falling off the wagon; that he said he fell from the wagon and hurt his right shoulder and leg; that several days afterwards he complained of his left shoulder, but at first complained of his right shoulder being hurt.

Dr. F. J. Fiske testified for plaintiff. He stated that he had treated plaintiff for an injury, and not for disease; that his treatment began about February 1, 1925; that he had X-rays taken; that his examination showed ankylosed shoulder; that plaintiff was unable to raise his arm at all, unable to move the shoulder, and there appeared to be a fracture in connection with a dislocation; that the X-ray taken by Dr. Kirby, of Salt Lake, a specialist, disclosed a downward dislocation of the shoulder of over one-fourth of an inch; that plaintiff gave him a history of the accident in which he fell from a wagon striking his shoulder. Witness was of the opinion that the fall from the wagon was the cause of plaintiff's present condition; that it would be impossible for gonorrhea or any other disease to produce the condition plaintiff is in. A communication from Dr. S. C. Baldwin was read to the witness to the effect that Dr. Baldwin had a history of the accident, showing that plaintiff had fallen upon his left shoulder, and had also heard of the gonorrhea before the accident occurred, but was doubtful whether plaintiff had anything more than a simple urethritis; that Dr. Baldwin did not believe that gonnorrhea, even if it had existed, would have produced the quantity of arthritis shown in the X-ray so soon after the attack, and have

produced a displacement of the head of the humerus, as shown by the X-ray; that Dr. Baldwin was of opinion that plaintiff had an old arthritis in the shoulder before the accident which was relighted by the accident. Dr. Fiske agreed with Dr. Baldwin's conclusions, except as to the previous arthritis. He saw no reason for the assumption.

Dr. William T. Ward testified for the casualty company. He stated that he had talked with plaintiff to get a history of the case, and made a physical examination; that he took numerous X-rays to determine conditions with respect to the left shoulder and also to clarify the X-rays taken previously; that Dr. Kirby who took the previous X-rays was engaged to take further pictures in order to obtain from him a final conclusion. At this point the witness was permitted to read a report which he had prepared covering his investigation of the entire case including the history as given him by plaintiff. The report also showed conflicts in the evidence as to how the accident occurred. Witness was unable to find any definite evidence of injury to the left shoulder as a factor in the disability present. He also submitted the final conclusion of Dr. Kirby who had taken the X-ray pictures at his request. His conclusion was that the present condition of plaintiff was not the result of an injury. The X-ray report of Dr. Kirby was shown to the witness. In that report Dr. Kirby refers to a former report made by him on X-rays taken in February and May, 1925, in which he had expressed an opinion that the condition found was the aftermath of a fracture. In the later report dated October 6, 1925, Dr. Kirby thought his opinion expressed in the former report was erroneous, and he felt obliged to change his original diagnosis after examination of subsequent X-rays and other factors in the case. Upon resuming the examination of Dr. Ward he said he had examined all the X-rays that had been taken in February, May, and October; that there was no fracture or dislocation in the sense of a traumatic dislocation of the shoulder; that it would be impossible for a man to work a day or so with an arm or shoulder dislocated or

fractured as claimed by the plaintiff; that there is a present disability in the shoulder which witness estimated at 50 per cent; that he was quite sure the arm would improve better without additional treatment.

Dr. Kirby was sworn, and verified the report above referred to which was exhibited to Dr. Ward. The X-rays were left with Dr. Kirby, with directions by the examining commissioner to submit them to be examined by Doctors Pendleton, Ossman, and A. Jack Hosmer. The examining commissioner submitted to Dr. Pendleton, as chairman of the medical committee, a transcript of the proceedings in all the various hearings to which we have referred, and requested conclusions thereon in writing that the same be made part of the record and considered as evidence. The record discloses their conclusions to the effect, that they each concur in the conclusions of Dr. Ward, except that Dr. A. Jack Hosmer places the disability at not exceeding 25 per cent, while Doctors Pendleton and Ossman estimate it at 35 per cent.

The opinions of Doctors S. D. Kalonge and George F. Roberts were also solicited by the commission. Their conclusions were that plaintiff had a general rheumatic arthritis most marked in the knees and left shoulder, and that the X-rays failed to show any evidence of injury to the shoulder.

From the foregoing statement, which is only a brief synopsis, it appears that not less than thirteen physicians have in one way or another participated in the case. Notwithstanding this, it appears that plaintiff is still alive, and, in the opinion of one of the physicians, plaintiff's condition will improve, provided there is no further treatment.

As stated in the beginning, the only question is, Does the evidence sustain the findings upon which the commission based its conclusion that plaintiff was not entitled to compensation?

In view of the record which we have endeavored to fairly and truthfully reflect in the foregoing statement, it is unnecessary to indulge in lengthy comment. Plaintiff claims compensation for an injury resulting from an accident in

which he alleged, and afterwards testified, that in endeavoring to get off his wagon his right leg went through the spokes of the wheel, and because of his team running backwards, he was thrown off, striking his left shoulder on a railroad rail, or upon the frozen ground. Three witnesses saw the accident, and each testified to the effect that he fell on his right side, or right shoulder. Three other witnesses, including his wife, testified that shortly after the accident he informed them that he had fallen on his right shoulder. Such also was his first report to Dr. Christensen, the first physician called into the case. The only testimony to the contrary is that of the plaintiff himself, and that after having first admitted that he fell on his right shoulder. Besides this, the circumstances of the accident as described by the plaintiff himself, his position on the wagon, his right leg going through the wheel, together with the unexpected backward movement of the team, is strongly corroborative of his first admission and the testimony of the other witnesses that he fell on his right shoulder. Whatever may be the ailment of which plaintiff complains, whether serious or otherwise, it must be conceded, if human testimony is to be believed, he did not light on his left shoulder in the accident to which he attributes his injury. The conclusions of practically all of the physicians and medical experts, except Dr. Fiske is to the effect that his condition is not due to a traumatic injury. In view of all the evidence in the case, it is difficult to see how counsel for plaintiff can seriously contend there is no evidence in the case to support the findings. If no physician had testified in the case at all, in view of the conflict in the evidence as to how the accident occurred, the commission would have been amply justified in making the finding it made.

In deference to counsel's earnest contention that there is no evidence to support the finding we have set out the main features in greater detail than perhaps we otherwise would have done. Counsel and litigants in these cases should understand once for all that this court is powerless to review the

evidence except for the purposes heretofore frequently declared by the court in a long series of well-considered cases. The rule is well sated in *Twin Peaks Canning Co.* v. *Industrial Commission,* 57 Utah, 589 at page 596, 196 P. 853, 856 (20 A. L. R. 872) :

"This court is now firmly committed to the doctrine that it will examine into the evidence only to ascertain whether there is any substantial evidence in support of the findings of the commission and whether it has either acted without or in excess of its jurisdiction. We refer to the following cases: *George A. Lowe & Co.* v. *Industrial Commission,* 56 Utah, 519, 190 P. 934; *McVicar* v. *Industrial Com.,* 56 Utah, 342, 191 P. 1089; *Littsos* v. *Industrial Com.,* 57 Utah, 259, 194 P. 338; *Utah Fuel Co.* v. *Industrial Com.,* 57 Utah, 246, 194 P. 122; *Ogden City* v. *Industrial Com.,* 57 Utah, 221, 193 P. 857; and *Globe G. & M. Co.* v. *Industrial Com.,* 57 Utah, 192, 193 P. 642."

Many decisions have been rendered by this court involving the same question since those cases were decided. The decisions have been uniform to the same effect ever since the passage of the Industrial Act.

The order of the commission denying compensation is affirmed.

GIDEON, C. J., and FRICK, CHERRY, and STRAUP, JJ., concur.