296 P.2d 291

TEAMSTERS, CHAUFFEURS, AND HELPERS OF AMERICA, LOCALS NO. 222 AND 976 OF INTERNATIONAL BROTHERHOOD, for and on behalf of membership, Plaintiffs,

v

ORANGE TRANSPORTATION COMPANY and Inland Freight Lines, The Industrial Commission of the State of Utah, its Board of Review, Appeals Referee and Claims Supervisor, Intermountain Operators League, Defendants.

No. 8428.

Supreme Court of Utah.

April 11, 1956.

Reid W. Nielson, Salt Lake City, for plaintiffs.

E. R. Callister, Jr., Atty. Gen., Fred F. Dremann, Salt Lake City, for defendants.

CROCKETT, Justice.

Review of the action of the Industrial Commission in denying unemployment compensation to plaintiffs. Plaintiffs belong to Locals 222 and 976 of the International Brotherhood of Teamsters, Chauffeurs and Helpers of America (hereinafter called the Union). The Union had negotiated a master contract with the Intermountain Operators League (hereafter called the Employers' Group), a voluntary association of trucking companies. That contract terminated on May 1, 1955, but operations continued pending negotiations of a new contract. On May 19, the Union struck two only of the Employers' Group—that is Pacific Intermountain Express (P.I.E.) and Consolidated Freightlines Inc. (Consolidated). All of the other employers shut down operations, acting on the announced principle that "a strike against one is a strike against all." Their employees (the plaintiffs here) were notified not to report for work until called.

Under the above facts the defendant board denied plaintiffs' claims for unemployment compensation on the basis of our statute which provides:

"An individual shall be ineligible for benefits or for purposes of establishing a waiting period: * * *

"(d) For any week in which it is found by the commission that his unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group or workers at the factory or establishment at which he is or was last employed." [1]

The Commission held that under our interpretation of this provision in Olof Nelson Construction Co. v. Industrial Commission,[2] plaintiffs would come within a "group" whose "unemployment is due to a stoppage of work which exists because of a strike involving [the worker's] grade, class or group."

The Olof Nelson case involved a labor dispute between a multiple employer bargaining unit of 75 general contractors and a multiple employee bargaining unit of 5,000 workers. The parties had entered a master contract that could be reopened only in regard to wage provisions. The union informed the contractors that it intended to strike against two of the 75 contractors in order to force acceptance of its wage demands, and indicated an intention

1. Sec. 35-4-5(d), U.C.A.1953.

2. Utah, 243 P.2d 951.

of later proceeding successively against other employers in carrying out its design. The contractors replied that a strike against one would be considered a strike against all. The union struck the two as threatened and the other contractors ceased operations. Their employees applied for unemployment compensation. The Industrial Commission granted the claims on the theory that the work stoppage as it applied to the other 73 contractors involved a lockout rather than a strike. This court reversed, holding that the legislature intended that the employee's right to compensation depended upon the volitional action of the union or other group¯ with which he was identified.[3] Under the facts of the Olof Nelson case, it seemed clear that the economic sanctions of the strike were directed against the entire employer group and the strike was called for all of the employees, and that all would benefit from forcing acceptance of union demands. Consequently the court concluded that the finding should have been that the multiple employee association constituted a "group" within the meaning of the statute and that the multiple employer association could stand together as a group against the action aimed at all of them collectively.

■ Plaintiffs' Union seeks to distinguish the instant situation on several grounds. They contend that the only dispute in the negotiations then being carried on was with P.I.E. and Consolidated over a change proposed by these companies in terminal or division points which affected the number of miles and hours in the shifts driven by truck drivers, and that the strike was purposed to force acceptance of the Union's position in that regard. It is the plaintiffs' position that the shutdown of operations by others of the Employers' Group was because of division points—an issue that did not directly concern them— and that their shutdown placed their drivers out of work involuntarily. However, the Appeals Referee did not make any such finding, nor was he obliged to do so. The only instance in which he would be required to so find, or where we would interfere with his refusal to so find, would be where the evidence was uncontradicted and pointed so unerringly to one conclusion that reasonable minds could not remain unconvinced of the fact, so that it would be manifest therefrom that he had acted arbitrarily or capriciously in disregard of such evidence.[4]

■ Another claim of plaintiffs is that the instant case is distinguishable from the Olof Nelson case on the grounds that here there was no longer any contract between the parties, it having terminated on May 1, and that the Employers' Group had ceased to exist as a bargaining unit. In support of the latter point, plaintiffs argue that negotiations were transferred to the

3. Olof Nelson Construction Co. v. Industrial Commission, Utah, 243 P.2d 951.

4. Ray v. Consolidated Freightways, 4 Utah 2d 137, 289 P.2d 196, 201; Hauser v. Industrial Comm., 77 Utah 419, 219 P. 780; Woodburn v. Industrial Comm., 111 Utah 393, 181 P.2d 209.

West Coast, and that two of the employers here involved—Orange Transportation and Inland Freight Lines—had given notice in an attempt to withdraw from the Employers' Group. Again, however, these issues were a matter for affirmative proof on the part of plaintiffs, and the Appeals Referee found against them. Thus they are governed by the same principles that we have discussed above.[5]

The final distinction urged was that in Olof Nelson, it was widely publicized that a strike against one would be a strike against all, whereas, here first the Union's notice of the strike was given, and only afterwards was the policy announced that if there were such a strike the other operators would close down. Such a distinction is not material. As this court stated in Olof Nelson, it is the volitional nature of the departure from work and which side initiates it that governs. It is indicated here that the parties had in all likelihood exhausted the possibilities of further results from bargaining before the impasse was reached and that although the strike was called because of the dispute in this particular, it was actually part of the overall picture of negotiations which was being carried on. There was evidence that pickets were recruited on a voluntary basis from personnel of all of the employers and that the employees did not distinguish the dispute that they had against P.I.E. and Consolidated from their relations with the other employers. This would justify the conclusion of the Appeals Referee that this was not an isolated dispute between P.I.E. and Consolidated and their truck drivers, but was part of the general negotiations looking toward the agreement upon and execution of a new master contract. The situation thus seems governed by the criterion suggested by the concurring opinion in the Olof Nelson case:

"[The] principle is sound * * * that he who first resorts to the use of work stoppage as a means of putting on economic pressure to settle a dispute will be chargeable with the responsibility of having done so. Thus, the critical fact to be determined is whether the conduct of labor or management is the primary and initiating cause of the work stoppage * * *. [As stated in McKinley v. California Emp. Stabilization Comm., 34 Cal.2d 239, 209 P.2d 602, 606:] '* * * it was proper to relate responsibility for the work stoppage to the party who created its actual and directly impelling cause.' "[6]

Our review of the record, as outlined above, indicates that there was evidence from which the Appeals Referee could find that the action of the Union was aimed at the Intermountain Operator's League as a group with which it was negotiating, that Orange and Inland were members of that group, and that the strike was initiated for the purpose of forcing

5. See Note 4, supra.

6. Utah, 243 P.2d 951, 962, 967.

capitulation of all members of the Employers' Group. Such findings may not be disturbed by this court so long as they are supported by substantial evidence.[7] The order of the Industrial Commission is affirmed. Costs to respondents.

McDONOUGH, C. J., and WADE, J., concur.

WORTHEN, J., concurs in result.

HENRIOD, J., does not participate.

7. Adams v. Industrial Comm., 67 Utah 157, 246 P. 364.