318 P.2d 336

**OPERATING ENGINEERS, LOCAL UNION NO. 3 OF INTERNATIONAL UNION OF OPERATING ENGINEERS, for and on behalf of members, Plaintiffs,**

v.

**The INDUSTRIAL COMMISSION of the State of Utah, its Board of Review, Appeals Referee, and Claims Supervisor, Defendants.**

No. 8444.

Supreme Court of Utah.

Nov. 19, 1957.

Fred L. Finlinson, L. DeLos Daines, Salt Lake City, for plaintiffs.

E. R. Callister, Atty. Gen., Fred F. Dremann, Salt Lake City, for defendants.

ELLETT, District Judge.

The plaintiff asks this court to review an order of the Industrial Commission of Utah which affirmed the decision of the Appeals Referee.

The Kennecott Copper Corporation operates an open-pit mine in Utah and hires thousands of employees. These employees have organized themselves into at least eleven unions.

The contracts between the Kennecott Copper Corporation and the various unions were due to expire on June 30, 1955; and in order to facilitate negotiations for new contracts, eleven unions met in May of 1955 and organized what is known as the "Unity Council." The purpose of the Unity Council was to provide a medium through which the eleven unions, including plaintiff, could negotiate jointly with the company on the subject of wages. All other issues involving the several unions were to be negotiated separately.

Negotiations were still in progress on the night of June 30–July 1, when five of the eleven unions (other than plaintiff) decided to call a strike against the Kennecott Copper Corporation, and at about the hour of two o'clock in the morning posted picket lines. None of these five unions had withdrawn from the Unity Council at the time of the posting of the pickets.

The company being of the opinion that the presence of a picket line would make

it impossible to carry on its work closed the mine, and the individual members of plaintiff applied to the State of Utah for unemployment benefits. A representative of the Utah Department of Employment Security of the Industrial Commission of this state made a decision denying employment compensation on the grounds that their unemployment was due to a stoppage of work which existed because of a strike involving their grade, class, or group of workers at the establishment where they were last employed.

After due notice and hearing, the Appeals Referee of the Department of Employment Security affirmed the decision of the department representative, and thereafter the Board of Review of the Industrial Commission of Utah affirmed the decision of the Appeals Referee and denied any further hearing on appeal.

The statutory law pertaining to the problem is found in the Session Laws of Utah 1955 at page 100. Section 35–4–5 insofar as material reads as follows:

"An individual shall be ineligible for benefits or for purposes of establishing a waiting period: * * * (d) for any week in which it is found by the commission that his unemployment is due to a stoppage of work which exists because of a strike involving his grade, class, or group of workers at the factory or establishment at which he is or was last employed.

"(1) If the commission, upon investigation, shall find that a strike has been fomented by a worker of any employer, none of the workers of the grade, class, or group of workers of the individual who is found to be a party to such plan, or agreement to foment a strike, shall be eligible for benefits; * * *."

Parenthetically, it may be noted here that Section 35–4–5, Utah Code Annotated 1953, erroneously states that an individual shall not be ineligible for benefits, etc. However, this is a printer's mistake only, as the law enacted in Session Laws of Utah 1951 as Section 42–2a–5 says an individual shall be ineligible for benefits, etc., and the Code of 1953 was not enacted as a law and did not repeal the Session Laws but only provided that the codification of 1953 should be approved, adopted, and legalized as to arrangement of said text by title, chapter, article, and section, for the purpose of amendment or repeal of said text in whole or in part by reference thereto. (See 68–2–2, U.C.A. 1953) The discrepancy would be moot in view of the fact that the section of Utah Code Annotated 1953 was amended by the Laws of Utah 1955 as above set forth.

The problem which we have to determine is whether or not the members of the local

union not calling the strike are barred from receiving unemployment benefits because they belong to a group of workers who did call the strike.

In the case of Members of Iron Workers' Union of Provo v. Industrial Commission, 104 Utah 242, 139 P.2d 208, the Iron Workers' Union was defeated by the Steel Workers' organization in an election for the right to represent all workers at the Pacific States Cast Iron Pipe Company. Thereafter the Steel Workers called a strike, and the Iron Workers asked for compensation insurance on the ground that they had no voice in the calling of the strike and were not directly involved therein. The decision written by Mr. Justice Mc-Donough and concurred in by all members of the court said, 104 Utah on page 253, 139 P.2d on page 212:

"A strike involves the 'grade, class, or group' of an employee within the meaning of the statute if the dispute which results in the strike is with reference to wages, hours or conditions of employment of a group of which he is a member. True, a 'class, grade or group' may be coextensive with a particular union membership, but this [sic] not necessarily so. In the instant case the members of the Iron Workers' Union were dissident members of a 'group' involved in the strike; nevertheless they were members of the 'group' which was involved in the strike. * * * It is not only those who foment the strike or bring it about who are ineligible, but the group to which such persons belong—however inclusive—the group for whose benefit the strike is called."

Olof Nelson Construction Co. v. Industrial Commission, 121 Utah 525, 243 P.2d 951, involved a construction of the section of the statute set out hereinbefore. In this case approximately seventy-five general contractors in this area bargained collectively with six basic craft unions affiliated with the American Federation of Labor. Both the contractors and the unions had committees to negotiate between the contractors and the unions. The unions were represented by the Building Trades Council, and the secretary of the Building Trades Council notified the Labor Committee of the Associated General Contractors that the labor unions would strike two members of the Associated General Contractors. The Associated General Contractors promptly notified the Building Trades Council and each of the six basic crafts that a strike against any individual contractor would be regarded as a strike against all of them.

A strike was called against two contractors, whereupon all members of the Associated General Contractors stopped work and laid off all of their employees. The

employees working at a place other than the two struck companies claimed compensation insurance. Mr. Chief Justice Wolfe after quoting from Members of Iron Workers' Union of Provo v. Industrial Commission, 104 Utah 242, 139 P.2d 208, says at page 956 of 243 P.2d:

"There is no doubt that the union's objective in striking the two jobs was to apply economic pressure to assist the bargaining representatives of the Six Basic Crafts in obtaining an industry-wide wage raise."

And at page 957 of 243 P.2d the Chief Justice quoting from California holdings says:

"It seems clear that under such industry-wide, single contract negotiation, economic action by either side, whether strike or lockout, would be considered by each of the parties as action against the entire group struck or locked out."

In the case of Teamsters, Chauffeurs, and Helpers of America, etc., v. Orange Transportation Co., 5 Utah 2d 45, 296 P.2d 291, the plaintiff had negotiated a master contract with the Intermountain Operators League, a voluntary association of trucking companies. Upon the expiration of the contract, work continued pending negotiations for a new contract. Before such a contract was reached, however, the union struck two of the employers' group, whereupon all of the other employers shut down operations acting on the announced principle that a strike against one is a strike against all. The members of the union who worked for the trucking companies not struck by the union filed for unemployment compensation benefits. In the unanimous decision of the court written by Mr. Justice Crockett the following language is used on page 293 of 296 P.2d:

"Under the facts of the Olof Nelson case, it seemed clear that the economic sanctions of the strike were directed against the entire employer group and the strike was called for all of the employees, and that all would benefit from forcing acceptance of union demands. Consequently the court concluded that the finding should have been that the multiple employee association constituted a 'group' within the meaning of the statute and that the multiple employer association could stand together as a group against the action aimed at all of them collectively."

In the instant case there was only one employer, but we think that so long as the eleven unions were negotiating jointly on wages they constituted a "group" and that a strike of one union would be intended to be and actually would be a pressure beneficial to all eleven unions.

The order of the Industrial Commission is affirmed with costs to the respondents.

McDONOUGH, C. J., and CROCKETT and WADE, JJ., concur.

MARTIN M. LARSON, District Judge.

I concur because the court in prior case settled the law as here stated.

WORTHEN and HENRIOD, JJ., having disqualified themselves, do not participate herein.