Grafton,
No. 5861.

RALPH G. FOLEY

*v.*

BENJAMIN C. ADAMS, *Comm'r & a.*

Argued April 1, 1969.
Decided September 30, 1969.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*Orr & Reno* and *Richard B. Couser* (*Mr. Couser* orally), for the Franconia Paper Corporation.

*James M. Riley, Jr.* and *Edward F. Smith* (*Mr. Riley* orally), for Benjamin C. Adams.

PER CURIAM. This is an appeal from the disallowance of a claim for unemployment compensation on the ground that unemployment was due to a stoppage of work because of a labor dispute. After hearing, the Trial Justice (*Keller*, J.) made certain findings and transferred without ruling the ultimate question regarding disqualification.

The plaintiff is president of Profile Local #15 of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers and is appealing on behalf of himself and 138 other members whose claims will be governed by the result of his case. Local #15 with a membership of about 160 and another union, Local #176 of the United Papermakers and Paperworkers, having a membership of about 300, had been certified by the National Labor Relations Board as the joint bargaining agency for the employees of the Franconia Paper Corporation. The membership of Local #15 worked in that part of the operation called the acid plant where wood was processed into "slush pulp" from which paper is made. Local #176 included those workers who manufactured paper from the "slush pulp." Local #15 also represented all maintenance men. The entire process was an integrated one with the material starting with wood and flowing through a continuous process to the final paper product.

A joint contract between the two unions and Franconia was due to expire July 15, 1967. On or about May 1 Local #15 gave notice of a desire to modify the contract, and Local #176 gave notice of a desire to modify or terminate the contract. It had been the practice for the unions to bargain jointly until agreement was reached and then for each to bargain separately

as to special problems involving individuals. On this occasion Local #176 stated it wished to bargain separately and sought a separate contract. Local #15 indicated a willingness to do either and submitted alternative agenda but was informed by the national union that separate negotiations would be illegal. Both unions in their proposals sought an 8% wage increase and made other identical demands involving working conditions and benefits. There were also some demands which were not identical. On or about July 8 after some negotiations, an impasse was reached because of the refusal of #176 to bargain jointly. Local #15 granted a 30-day extension of the contract but Local #176 refused, and on July 30 voted to strike effective midnight July 31. Local #15 did not take a strike vote. There being no way to use the "slush pulp" produced by the employees of Local #15 with the members of Local #176 on strike, Franconia shut down the entire plant.

Local #176 refused to give permits for maintenance men of Local #15 to cross the picket line but did give permits to four men to operate the power station which also furnished power for the town. Franconia withdrew its offer of work for the maintenance men after the refusal of picket line permits. The only other work offer for Local #15 was to unload some coal cars. Foley said he would rather not as there might be trouble and the offer was withdrawn. This was found by the Trial Court to have been a rejection on the part of Local #15.

Franconia filed an unfair labor practice complaint against #176 for its refusal to bargain jointly. After the intervention of a federal mediator and further negotiations a joint contract was signed on November 3, 1967 which for the most part provided the same benefits for the members of both unions.

RSA 282:4-F disqualifies a person from benefits for any week when unemployment is "due to a stoppage of work which exists because of a labor dispute . . . " unless it is proved "(1) that he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute . . . . " There can be no question but that there was a "labor dispute" at Franconia and that it caused

the "stoppage of work" which in turn resulted in plaintiff's un-employment. He (and the 138 others) therefore are disqualified from benefits unless he proves that he comes within both the exceptions of s. 4-F.

In deciding whether plaintiff was "participating in or financing or directly interested in the labor dispute which caused the stoppage of work" we must identify the "labor dispute." The "labor dispute" was the controversy over the terms of a new contract concerning wages, hours, working conditions or terms of employment (*Amory Worsted Mills* v. *Riley*, 96 N. H. 162, 164) and whether Local #176 would bargain separately. As one part of a certified joint bargaining agency Local #15 and its members were participating in and directly interested in this labor dispute. *Operating Engineers* v. *Industrial Comm'n*, 7 Utah 2d 48; *Dravo Corp.* v. *Unemployment Compensation Bd. of Rev.*, 187 Pa. Super. 246; *Borchman Sons* v. *Carpenter*, 166 Neb. 322. The objectives of both unions as to wages, working conditions and terms of employment were basically the same and the interest of Local #15 and its members as one component of a joint bar-gaining unit requires a ruling that their interests were "direct" and "not indirect." This case is factually unlike such cases as *Kieckhefer Container Co.* v. *Commission*, 125 N. J. L. 52; *Department* v. *Drummond*, 30 Ala. App. 78; *Wicklund* v. *Commissioner*, 18 Wash. 2d 206; *Shell Oil Co.* v. *Cummins*, 7 Ill. 2d 329 relied on by the plaintiff.

We hold that plaintiff was disqualified from receiving unemployment compensation benefits.

*Appeal dismissed.*


LAMPRON, J., did not sit; the others concurred.