[S. F. No. 19213. In Bank. July 29, 1955.]

MANNING'S, INC. (a Corporation), Appellant, v. WILLIAM A. BURKETT, as Director of Employment, etc., Respondent.

Ernest J. Hill and Walter E. Dorn for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw and Vincent F. Lafferty, Deputy Attorneys General, for Respondent.

GIBSON, C. J.—Plaintiff instituted this proceeding against defendant, the Director of Employment, seeking to recover contributions allegedly overpaid to the unemployment fund and to obtain a readjustment of its account. A demurrer to the complaint was sustained without leave to amend, and judgment was entered for defendant.

The complaint alleged as follows: In 1944 plaintiff commenced an action against defendant which resulted in a judgment ordering a refund to plaintiff of $22,481 and the removal of charges from its account in the sum of $45,390 covering the years 1941, 1942 and 1943. The judgment was affirmed on May 11, 1950, in *Manning's, Inc.* v. *Bryant*, 35 Cal.2d 903 [218 P.2d 7]. Defendant paid the judgment and adjusted plaintiff's account, effective as of June 30, 1949. In connection with this adjustment, defendant issued to plaintiff a statement of its reserve account dated May 31, 1950. Plaintiff protested this statement within the time and in the manner prescribed by law upon the ground that defendant failed to make an adjustment of tax rates and contributions for the rating periods from 1943 to 1949. An appeal from disallowance of the protest was taken to the California Unemployment Insurance Appeals Board and was denied. During the calendar years 1944 through 1950, plaintiff paid its contributions regularly at the tax rates indicated by defendant's computations. As a result of the judgment affirmed in *Manning's, Inc.* v. *Bryant*, 35 Cal.2d 903 [218 P.2d 7], defendant was required to adjust plaintiff's contribution rates for the periods which elapsed during the pendency of the action. If adjustments had been made as of June 30, 1943, plaintiff's tax rate for 1944 would have been decreased from 2.5 per cent to 1.5 per cent, which would have resulted in a reduction of $17,314.05 in plaintiff's contributions. With respect to 1945, the tax rate would have been decreased from 2 per cent to 1.5 per cent, which would

have resulted in a reduction of $9,365.73 in plaintiff's contributions. It is further alleged that there is now due plaintiff on account of excess contributions the sum of $26,679.78 and interest thereon, that upon the refund of the excess contributions further adjustment of plaintiff's reserve account balances will be required for the taxable periods after 1945. and that plaintiff's tax rates for these years will not be changed.

It is not disputed that the judgment for plaintiff, affirmed by this court in 1950, covering 1941, 1942 and 1943, affected the contributions plaintiff was required to make for the years 1944 and 1945. Defendant, however, takes the position that a cause of action was not stated in the complaint because of the failure to allege that proper and timely protests were filed by plaintiff in 1944 and 1945.

At the time the overpayments were allegedly made in 1944 and 1945, section 41.1 of the Unemployment Insurance Act provided that an employer was to be furnished "not less frequently than annually" with a statement showing charges and credits to his account, the net balance of his reserve. and his contribution rate for the next succeeding rating period. Such statement was conclusively presumed to be correct unless protested within sixty days of its mailing. Subdivision (c) of the section provided: "In the event that a protest proceeding is pending with respect to any statement provided for above when any contribution becomes due, the employer shall pay the contribution at the rate indicated by the commission's computation. If a determination indicating that a lesser contribution rate should have been computed is subsequently made in favor of the employer, the commission immediately either shall refund to the employer or credit to his account any amount so determined to have been paid in excess of the amount which he would have been required to pay had the computation been made correctly . . ." (Stats. 1941, ch. 940, p. 2535; 3 Deering's Gen. Laws, 1943, pp. 3342-3343, Act 8780d.)

The statutory provision requiring that a protest be made within 60 days after the mailing of a statement did not apply to statements furnished to plaintiff during the pendency of the protest proceeding; instead the applicable provision was subdivision (c) quoted above. The second sentence of subdivision (c) was designed to assure an employer of a refund of excess contributions which, under the first sentence, he was required to pay regardless of the pendency of a

protest proceeding. As we have seen, the result in the action for refunds covering 1941, 1942 and 1943 affected the rates assessed in 1944 and 1945. Until that action was finally determined, however, plaintiff was not in a position to know the extent, if any, to which the rates assessed in 1944 and 1945 were excessive, and any protests made in those years could not have been properly considered or disposed of by defendant.

The complaint sufficiently alleges a duty on the part of defendant to refund or credit any overpayments made by plaintiff during the pendency of the protest proceeding, and it was error to sustain a demurrer without leave to amend.

The judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.