[Civ. No. 20568. First Dist., Div. Three. Sept. 13, 1963.]

JOHN BREUNER COMPANY, Plaintiff and Appellant, v. IRVING H. PERLUSS, as Director of the Department of Employment, Defendant and Respondent.

Ernest J. Hill and Rex E. Shoop for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman and William L. Shaw, Deputy Attorneys General, for Defendant and Respondent.

SALSMAN, J.—Appellant seeks a refund of unemployment insurance taxes for the years 1944 through 1950. The amount claimed is $54,546.49. The trial court found appellant entitled to a refund of $1,521.28 and ordered judgment for this amount, plus interest. This appeal followed.

In order to understand the contentions of the parties it is necessary to note some of the statutory background of the controversy.

The California Unemployment Insurance Act makes provision for differences in the tax rate applicable to individual employers based upon the employer's experience with the risk of unemployment. (Unemp. Ins. Code, pt. I, ch. 4.) The use of this system of variable rates stems from the Federal Social Security Act of 1935, as amended. The federal act was designed in part to induce the states to enact unemployment insurance legislation. The federal statute provides for a 3 per cent tax on employers but permits an offset against this tax up to 90 per cent for payments made to support an approved state system of unemployment insurance. The federal statute sets up standards and requirements to which state legislation must conform in order that an employer be eligible for the 90 per cent credit against the federal tax. The California Unemployment Insurance Act is expressly declared to be a part of the national plan of unemployment reserves and social security (Stats. 1935, ch. 352, § 2; Unemp. Ins. Code, § 101).

The reduction described in the federal statute is available only on the basis of the employer's experience with the risk

of unemployment, or other factors having a direct relation to the risk of unemployment, during not less than three consecutive years immediately preceding the computation date. (26 U.S.C., § 3303(a)(1).) In compliance with federal law an experience rating formula is used in California. The formula may be expressed thus:

| Cumulated Contributions | minus | Cumulated Charges | == | Reserve Ratio |
|---|---|---|---|---|

Base Period Wages divided by 3

A separate account is maintained by respondent for each employer. As to each account the cumulated contributions represent payment of taxes by the employer; the cumulated charges represent benefit payments made to employees separated from employment with the employer; base period wages are taxable wages paid by the employer over a three-year period, divided by three. Thus the denominator is in fact the average of taxable wages over a three-year period.

The reserve ratio determined by the use of the formula is applied to a tax schedule in effect for the year for which the computation is made. Under the tax schedule, the higher the reserve ratio the lower the tax rate. The reason for this is simply that when an employer's reserve ratio is high it indicates his experience with unemployment has been good and his percentage of unemployment relatively low, and this results in a favorable rate of tax.

The difference between the parties to this appeal centers upon what amounts are to be included under the item "cumulated contributions" in the formula used by the respondent in the computation of appellant's tax. In prior litigation between these parties relating to taxes for the years 1941, 1942, and 1943 it was established that respondent had improperly charged appellant's reserve account with the sum of $36,636, representing unemployment claims paid by respondent to former employees of appellant. In that litigattion respondent was ordered to restore $36,636 to appellant's reserve account (see *John Breuner Co.* v. *Bryant*, 35 Cal.2d 897 [218 P.2d 4]). A recomputation of appellant's taxes then determined that appellant was entitled to a refund in the amount of $35,462. This refund was paid to appellant in 1950. On this appeal it is appellant's contention that, for the years 1944 through 1950, appellant's reserve account must be credited with the sum of $36,636, the amount by which its reserve account had been improperly charged until

the decision in *John Breuner Co.* v. *Bryant, supra,* in 1950. Appellant then contends that with this amount added to its account as of 1944 its taxes must be recomputed from 1944 to 1950, and it is by this method that appellant arrives at the amount of the claimed refund.

The respondent does not disagree that the item of $36,636 must be restored to appellant's reserve account. Respondent's basic contention is that, at the same time, effect must be given to the refund of $35,462. Here respondent says that although the refund was not paid until after the judgment in 1950, it must be considered as having been removed from appellant's reserve account as of the same date upon which the $36,636 item is added to appellant's account. In the formula previously explained the refund would be subtracted from the factor of cumulated contributions, since the refund represents an overpayment of tax. By use of respondent's method of correcting appellant's account and computing the correct tax for the period in question it appears that a refund of $1,521.28 is due appellant. The recomputation thus made eliminates all error, and requires appellant to pay only such amount of tax as it would have been required to pay if no error had ever been made in its account. Respondent's method was adopted by the trial court and used by it in its findings and judgment.

Thus, in summary, it appears that the real difference between the parties is as to the date upon which appellant's account shall be charged with the refund required by the judgment in *John Breuner Co.* v. *Bryant, supra,* the appellant contending that the refund is not to be considered until paid, that is, in 1950, and respondent asserting that the refund must be given effect as of the same time at which the improper charges were restored to appellant's account. In the reconstruction of appellant's account and a recomputation of the tax the $36,636 item was credited to appellant's account as of June 30, 1943 and thus affected the computation of appellant's tax for the period here involved.

Exhibit IX at trial shows that by use of respondent's method of adjusting appellant's account and computing its taxes, it was necessary to change the rate of tax for some of the years here in issue. Thus, in 1944 appellant's rate was too high, and in 1948 it was too low. Appellant first contends, therefore, that the trial court's judgment sanctioned a change in its tax rate for past years, without notice and contrary to the statute and decided cases. We find no

merit in this contention. Appellant's principal reliance is upon *Northrop Aircraft, Inc.* v. *California Emp. etc. Com.,* 32 Cal.2d 872 [198 P.2d 898]. In *Northrop,* it was held that once a tax rate had been established, the Department of Employment on its own initiative could not thereafter change the rate, except in a protest proceeding, without giving the employer notice and an opportunity to be heard before the close of the rating period to which the change applied. The ruling in that case is not applicable to the facts of the case we now have before us. Here respondent seeks to change appellant's tax rate, not on his own initiative, as in *Northrop,* but only as a result of a judicial proceeding instituted by appellant for the very purpose of adjusting appellant's account. In the *Northrup* case, however, the court did recognize that as a result of a protest proceeding a change in the tax rate applied to an employer's account might become necessary. Moreover, the briefs before us frankly state that the case we now consider is but one of a number of pending cases in which substantially the same theory of refund is advanced against respondent as is now urged upon us by appellant. One such case involves Manning's, Inc. In common with appellant here, and many others, Manning's, Inc., was successful in litigation to obtain a refund of taxes for the years 1941, 1942 and 1943. (See *Manning's, Inc.* v. *Bryant,* 35 Cal.2d 903 [218 P.2d 7], and *Bell-Brook Dairies, Inc.* v. *Bryant,* 35 Cal.2d 404 [218 P.2d 1].) Thereafter, Manning's, Inc., as did appellant here, filed its action to recover taxes for the years 1944 through 1950. In an appeal concerning the sufficiency of the pleadings in the second *Manning's, Inc.* case, the court noted that: "As a result of the judgment affirmed in *Manning's, Inc.* v. *Bryant,* 35 Cal.2d 903 [218 P.2d 7], defendant was required to adjust plaintiff's contribution rates for the periods which elapsed during the pendency of the action." (See *Manning's, Inc.* v. *Burkett,* 45 Cal.2d 43-44 [286 P.2d 13].) Thus, in *Northrop Aircraft, Inc.* v. *California Emp. etc. Com., supra,* and in *Manning's, Inc.* v. *Burkett, supra,* the court has recognized that in protest proceedings it may become necessary, in the final adjustment of a taxpayer's account, to change an employer's previously fixed tax rate. We find no validity, therefore, in appellant's contention that respondent may not in this protest proceeding make the adjustment to which appellant here objects.

Appellant's second contention is that by its judg-

ment the trial court permitted respondent to treat contributions previously collected as not being contributions in fact, and that this treatment is contrary to provisions of the Unemployment Insurance Act. It cannot be denied that during the years 1944 through 1950 respondent levied and collected from appellant unemployment insurance taxes at rates fixed by respondent. As we have seen, some of these rates were too high because respondent had improperly charged appellant's reserve account with compensation claims paid to appellant's employees. As a result of the proceedings in *John Breuner Co.* v. *Bryant, supra,* respondent was required to refund to appellant $35,462. Appellant claims credit for this sum while it was in possession of respondent and in appellant's account. In the formula previously referred to this sum would appear under appellant's "cumulated contributions." The presence of these funds in appellant's account obviously affected its rate of tax, and after taking credit for charges ordered restored to appellant's account, results in the amount of the refund claimed in this action, according to appellant's method of accounting.

Respondent claims, however, that the $35,462 refund must be considered as an erroneous overpayment of appellant's tax; that this amount may not properly be considered in the experience rating formula in the final adjustment of appellant's account and determination of the amount of tax actually payable for the years 1944 through 1950.

We find respondent's contentions to be correct. It must be remembered that appellant here seeks the benefit of an experience rating system adopted by the state pursuant to the federal statute, and subject to the requirements and standards fixed by that statute. ■ The federal statute provides: "... no reduced rate of contributions to a pooled fund or to a partially pooled account is permitted to a person (or group of persons) having individuals in his (or their) employ except on the basis of his (or their) experience with respect to unemployment or other factors bearing a direct relation to unemployment risk during not less than the 3 consecutive years immediately preceding the computation date; ..." The purpose of the federal requirement is to measure the risk of unemployment and to permit a lower rate of tax to those employers who maintain stable work forces and whose experience with the risk of unemployment is good, and conversely to impose a higher rate of tax upon those employers whose experience with the risk of unemployment is

bad. The system of experience rating thus compares the actual experience of various employers with respect to unemployment and rates them according to their success in stabilizing their work forces. The provisions of the California Unemployment Insurance Act relating to experience rating have the same purpose. The formula used in the process serves as an actuarial measuring device in determining the employment experience of all employers. It is apparent that if any false element or error is injected into the formula it will not serve the purpose for which it is designed. Appellant, in contending that the formula must at all times from 1944 through 1950 reflect its actual payments, even though those payments are erroneously made, injects error into the system and obtains a bizarre result. By use of appellant's method of computation the formula would measure error and not the risk of unemployment. This is strikingly illustrated by the figures which result from appellant's calculations. From 1944 through 1950 appellant has in fact paid $1,521.28 more in unemployment taxes than it would have paid had no error been made. By use of appellant's method of calculation a refund of more than $54,000 may be claimed, which with interest added would approach a final figure of almost $100,000. The cited portions of the federal statute providing for experience rating do not envision any such result, and nothing in the California Unemployment Insurance Act compels us to reach such an illogical conclusion. Appellant is entitled to a refund of any amount of taxes overpaid, together with interest on the overpayment, but is not entitled to compound respondent's error for the purpose of securing an unmerited windfall.

Other contentions are made by appellant but all of them lack merit. It is argued that one result of the judgment here is to permit respondent to create a fictitious fund into which is placed a portion of appellant's tax contributions. This is not correct. There is only one unemployment fund, namely that referred to in Unemployment Insurance Code section 1521. As noted, separate accounts are maintained for each employer (Unemp. Ins. Code, §§ 1025, 1026), and it is respondent's duty under Unemployment Insurance Code section 1177 to set forth in its records the amount of any employer contributions collected in excess of the amount due. All that has been done here amounts to nothing more than a revision of appellant's account to correct error and to

make a recomputation of the tax actually due.

Finally, appellant asserts a denial to it of due process of law. First it is said the trial court's judgment substantially impairs appellant's right to recover its excess contributions, together with tax credits such excess contributions would generate while in appellant's account. As we have previously said, nothing in the Unemployment Insurance Code or in the federal or state Constitutions requires us to reach the result for which appellant contends. Where, as here, appellant is permitted to recover all taxes actually overpaid for the period in question, together with interest, there is no denial of due process.

The judgment is affirmed.

Draper, P. J., and Devine, J., concurred.

A petition for a rehearing was denied October 11, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 6, 1963.