[Civ. No. 47202. Second Dist., Div. One. Apr. 29, 1976.]

LORCO PROPERTIES, INC., Plaintiff and Appellant, v.
DEPARTMENT OF BENEFIT PAYMENTS et al.,
Defendants and Respondents.

810

COUNSEL

David Silverton and S. Dwayne Chasteen for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Philip C. Griffin and Rodney Lilyquist, Jr., Deputy Attorneys General, for Defendants and Respondents.

OPINION

HANSON, J.—Lorco Properties, Inc. (hereinafter referred to as Lorco) appeals from a judgment of the trial court denying Lorco's mandamus petition and affirming the determination of the California Unemployment Insurance Appeals Board (hereinafter referred to as Appeals Board).

### FACTS

In 1965 Lorco became subject to the provisions of the Unemployment Insurance Code and was assigned account No. 155-9508 by the Department of Benefit Payments (hereinafter referred to as Department). Lorco reported taxable wages and paid unemployment contributions to the Department through June 30, 1968. Thereafter, Lorco continued to file contribution returns with the Department showing no taxable wages. On June 30, 1972, the Department cancelled Lorco's account by an automatic data processing operation.

During the quarter ending June 30, 1973, Lorco again began to report taxable wages and pay unemployment contributions to the Department. On August 22, 1973, the Department notified Lorco that it had been assigned a new account, No. 225-2432, because its former account was cancelled. Lorco then initiated further administrative proceedings.

On October 24, 1973, Lorco made written request to Department to transfer the reserves credited under its former account to its new account pursuant to Unemployment Insurance Code section 1051. On November 14, 1973, the Department denied the request for transfer.

On November 27, 1973, Lorco petitioned the Appeals Board, which affirmed the decision of the referee. Thereupon Lorco sought judicial review of the Appeals Board's action by petitioning for writ of mandate.

After hearing, the trial court discharged the writ and entered judgment in favor of the Appeals Board and all respondents in this action.

## ISSUES

Lorco contends that it is entitled to a writ of mandate compelling the Appeals Board to transfer its old account to its new account because Unemployment Insurance Code section 1029[1] is unconstitutional in that it provides for neither notice nor hearing prior to cancellation of a reserve account.

## DISCUSSION

We are limited on this appeal to a determination of whether the trial court was correct in discharging the writ of mandate. (*Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524 [116 Cal.Rptr. 122].)

It appears that Lorco by its course of conduct has been seeking to obtain an increase in its reserve account balance, by having its former balance credited to its new account to thus gain a more favorable tax rate. The situation is best understood by reference to the statutory unemployment insurance system, an adequate explanation of which is found in the case of *John Breuner Co.* v. *Perluss* (1963) 220° Cal.App.2d 163, 164-165 [33 Cal.Rptr. 580]: "The California Unemployment Insurance Act makes provision for differences in the tax rate applicable to individual employers based upon the employer's experience with the risk of unemployment. (Unemp. Ins. Code, pt. I, ch. 4.) The use of this system of variable rates stems from the Federal Social Security Act of 1935, as amended. The federal act was designed in part to induce the states to enact unemployment insurance legislation. The federal statute provides for a 3 percent tax on employers but permits an offset against this tax up to 90 percent for payments made to support an approved state

---

[1] Section 1029, subdivision (a), provides: "Whenever an employer ceases to pay wages in employment the reserve account of the employer, unless it has been transferred under Article 5 (commencing with Section 1051) of this chapter, shall be canceled on the records of the department after a period of three consecutive years has elapsed following the latest calendar quarter in which the employer paid wages in employment."

system of unemployment insurance. The federal statute sets up standards and requirements to which state legislation must conform in order that an employer be eligible for the 90 percent credit against the federal tax. The California Unemployment Insurance Act is expressly declared to be a part of the national plan of unemployment reserves and social security (Stats. 1935, ch. 352, § 2; Unemp. Ins. Code, § 101).

"The reduction described in the federal statute is available only on the basis of the employer's experience with the risk of unemployment, or other factors having a direct relation to the risk of unemployment, during not less than three consecutive years immediately preceding the computation date. (26 U.S.C. § 3303(a)(1).) In compliance with federal law an experience rating formula is used in California. The formula may be expressed thus:

$$\frac{\text{Cumulated Contributions} \quad \text{minus} \quad \text{Cumulated Charges}}{\text{Base Period Wages divided by 3}} \quad = \quad \text{Reserve Ratio}$$

"A separate account is maintained by respondent for each employer. As to each account the cumulated contributions represent payment of taxes by the employer; the cumulated charges represent benefit payments made to employees separated from employment with the employer; base period wages are taxable wages paid by the employer over a three-year period, divided by three. Thus the denominator is in fact the average of taxable wages over a three-year period.

"The reserve ratio determined by the use of the formula is applied to a tax schedule in effect for the year for which the computation is made. Under the tax schedule, the higher the reserve ratio the lower the tax rate. The reason for this is simply that when an employer's reserve ratio is high it indicates his experience with unemployment has been good and his percentage of unemployment relatively low, and this results in a favorable rate of tax."

It is clear that under this system of accounting the reserve account is utilized as a basis for adjusting the employer's tax rate according to the experience rating the employer receives. Lorco would not be entitled under this system to receive a tax rate lower than that of a new employer, once its new account is opened, because for the three years immediately

preceding its reserve account was not subject to charges for unemployment benefits. (Unemp. Ins. Code, § 982.)

■ Lorco contends that section 1029 is unconstitutional because it fails to provide for notice to the employer and the opportunity for a hearing before the reserve account is cancelled. (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13].) This might be the case were Lorco deprived by such cancellation of a "significant property interest." (*Randone* v. *Appellate Department, supra,* 5 Cal.3d at p. 552.) However, the statutory system adopted by this state in conformity to federal requirements does not render the reserve account such a significant property interest that cancellation must be surrounded by these procedural safeguards.

Ultimately, the provisions of Unemployment Insurance Code section 1029 are constitutional. As Lorco concedes, an employer's reserve account is computed by debits and credits on the basis of its continuing experience record with payment of unemployment benefits. An employer's sole interest in his reserve account is its use for calculation of his future tax rate. Section 1029 constitutes an integral part of a coherent system of unemployment taxation which is integrated with federal law; an employer is required to have a continuous current employment experience in order for it to qualify for reduced tax rates. This provision for cancellation does not, as Lorco contends, violate procedural due process.

The customary requirements of procedural due process are satisfied with respect to tax matters by authorizing judicial review of the protested tax assessment after payment is made. (*People* v. *Skinner* (1941) 18 Cal.2d 349, 355 [115 P.2d 488, 149 A.L.R. 299]; *Greene* v. *Franchise Tax Bd.* (1972) 27 Cal.App.3d 38, 43-44 [103 Cal.Rptr. 483].)

The procedural requirements of notice and hearing are inapplicable to statutes specifically authorizing a mechanical or administrative procedure such as cancellation of the reserve after three years of dormancy; this action does not evoke discretionary authority. (*County of San Mateo* v. *Palomar Holding Co.* (1962) 208 Cal.App.2d 194, 199 [24 Cal.Rptr. 905]; *Wood* v. *Public Utilities Commission* (1971) 4 Cal.3d 288, 296 [93 Cal.Rptr. 455, 481 P.2d 823]; *Security-First Nat. Bk.* v. *Franchise Tax Bd.* (1961) 55 Cal.2d 407, 419-420 [11 Cal.Rptr. 289, 359 P.2d 625].) Lorco

was not, therefore, deprived of an opportunity to influence the Department's action at a hearing provided to determine the balancing of interests.

■ Lorco attacks the authority of the Department of Benefit Payments to make assessments and collect employer contributions which are, in effect, taxes. (*Empire Star Mines Co.* v. *Cal. Emp. Com.* (1946) 28 Cal.2d 33, 47 [168 P.2d 686].) Lorco is prohibited from utilizing judicial process to prevent or enjoin the collection of taxes. (Cal. Const., art. XIII, § 32; Unemp. Ins. Code, § 1851; *Aronoff* v. *Franchise Tax Board* (1963) 60 Cal.2d 177, 178-180 [32 Cal.Rptr. 1, 383 P.2d 409].) Lorco had an adequate remedy at law to question the validity of the statute by an action against the Director of the Department of Benefit Payments (Unemp. Ins. Code, § 410) or by payment and making claim for refund. (*John Breuner Co.* v. *Perluss, supra,* 220 Cal.App.2d at p. 170.)

Judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.