[Civ. No. 17352. Third Dist. Aug. 23, 1979.]

FEATHER RIVER TRAILER SALES, INC.,
Plaintiff and Respondent, v.
HERMAN SILLAS, as Director, etc., Defendant and Appellant.

COUNSEL

Evelle J. Younger and George Deukmejian, Attorneys General, and Robert L. Mukai, Deputy Attorney General, for Defendant and Appellant.

Taylor, Hinsdale & Williamson and John W. Ramsaur for Plaintiff and Respondent.

OPINION

MASON, J.*—Defendant director, Department of Motor Vehicles (DMV) appeals from judgment granting plaintiff Feather River Trailer Sales, Inc. (Feather River) a peremptory writ of mandate which remanded administrative proceedings to DMV and commanded it to set aside its decision of April 19, 1976, imposing discipline upon Feather River. Disciplinary action had been ordered after an administrative hearing resulted in findings and decision, adopted by DMV, that Feather River had committed acts in violation of Vehicle Code sections 11713, subdivision (a) and 11713.1, subdivision (c)[1], justifying discipline under Vehicle Code section 11705, subdivision (a)(10).[2]

Section 11713, subdivision (a), provides that it is unlawful for the holder of any DMV license "To make or disseminate or cause to be made or disseminated before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement which is

---

*Assigned by the Chairperson of the Judicial Council.

[1]Subdivision (c) is now subdivision (e). (See Stats. 1978, ch. 1162, § 13.5.)

[2]All further statutory references are to the Vehicle Code unless otherwise specified.

untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading; or to so make or disseminate or cause to be so disseminated any such statement as part of a plan or scheme with the intent not to sell any vehicle or service so advertised at the price stated therein, or as so advertised."

Section 11713.1,[3] subdivision (e), makes it similarly unlawful for any such license holder "To refuse to sell a vehicle to any person at the advertised total price, exclusive of sales tax, vehicle registration fees . . . finance charges . . . while such vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and such time has elapsed."

Section 11705, subdivision (a)(10) provides that discipline may be imposed upon a license holder who "Has violated one or more of the provisions of Article 1 (commencing with Section 11700) of Chapter 4 of Division 5 or rules and regulations adopted pursuant thereto or adopted pursuant to Section 1651."

The disciplinary action taken by DMV against Feather River resulted from negotiations that Raymond Hill and his wife Barbara had with Feather River's salesman Burt Gordon, involving the purchase, or purported purchase, of a Scout trailer. The evidence at the administrative hearing revealed the following.

On November 22, 1975, Mr. and Mrs. Hill visited Feather River's place of business where they saw a Scout trailer with a posted sales price of $4,995. Gordon showed them through the trailer. The Hills returned the following day bringing with them another couple to look at the trailer; they again spoke with Gordon. There were no discussions of price at either time. A few days later Gordon called Hill's office requesting that the call be returned. Hill had his wife return Gordon's call and she was told that he, Gordon, "thought that $4,800 would be about the price . . . without a trade."

A week after their first visit, the Hills returned to Feather River's premises in response to a call from Gordon asking them to bring in the trailer they had considered trading in. Having decided not to trade in the old trailer, Hill offered Gordon $4,800 for the trailer "out-the-door," i.e., including all tax and license fees. Gordon figured backwards from the

[3]There are two Vehicle Code sections numbered 11713.1. Our reference is to Statutes 1973, chapter 1031, section 1 (amended Stats. 1978, ch. 1162, § 13.5).

$4,800 figure to take into consideration tax and license and came up with an "out-the-door" price of $4,801. At the time he suggested the price of $4,800, Hill did not know whether Gordon's statement of that price to his wife had been inclusive of tax and license. Gordon completed a purchase form for the Scout Trailer, listing the Hills as buyer and showing the price of $4,450, sales tax of $267, DMV fees (license) of $84, and a total cash price of $4,801. The agreement was in evidence at the administrative hearing and referred to by the parties. Hill gave Gordon a check for $200 as a down payment, which sum was entered on the purchase form resulting in a stated unpaid balance of $4,601. The bottom of the form provides places for the signatures of the buyer and of the dealer noting, under the place for the dealer's signature, that it is "Not Valid Unless Signed and Accepted by an Officer of the Company." A second line in this section reads "Approved, Subject to acceptance of financing by bank or finance company." Gordon signed the form in the places reserved for the dealer and the approver; the form was also signed by Ray Hill as purchaser.

At the time the purchase order was filled out, Hill believed Gordon to be Feather River's manager. Thus, when the form was completed he asked Gordon, "Do I now own this trailer?" Gordon replied "You do." and handed Barbara the trailer manual, suggesting that she read it over because it was her trailer now. Hill agreed to pay the balance of the price on December 9, 1975, and requested that Gordon keep the trailer locked. Gordon assured him that the trailer would be so kept and would be opened only for necessary inspections.

On or about November 30, 1975, Hill took a visiting friend with him to see the trailer and was surprised to discover that the trailer was open to the public, with apparent prospective buyers in it. He expressed his displeasure to the man showing the trailer and was told "Well, apparently you know more about this than I do." The man was Wayne Beutler, president of Feather River.

A few days later Hill called Gordon to ask about installing an air conditioner on the trailer. When Gordon returned the call, he advised Hill that an additional $300 was required in order to purchase the trailer. Gordon said Hill had 24 hours to make up his mind. Hill went to Feather River and talked with Gordon, insisting that he had already bought the trailer. Gordon told him "that he really didn't have authority to do what had been done," and Hill insisted on speaking to the highest person in authority then present. Hill was introduced to John Beutler, who told him

that if he wanted to buy the trailer there would have to be another purchase order negotiated. Hill insisted he was satisfied with the purchase order that he had and refused to pay any additional money. According to Hill, Beutler flipped the check across the table at him and told him to "hit the road." Hill told him he was going to bring in the balance of his payment and get the trailer; and Beutler advised him to get an attorney. Hill's $200 check, given as down payment on the trailer, was later returned to him by mail.

The testimony given at the hearing by Barbara Hill corroborated that of her husband.

Salesman Burt Gordon appeared at the hearing. It was his testimony that at the time Hill offered him $4,800 as an "out-the-door" price, he figured the tax and license by backing up from the $4,800 price, and told Hill "I can write it and submit it, that's all I can do." However, when asked whether he had made it clear to Mr. and Mrs. Hill that the completed purchase order was subject to approval, he said "I may not have." The Hills had testified that they were given no indication that the purchase order was merely tentative and required approval. Gordon's testimony regarding the first mention of the $4,800 price without a trade-in was a bit unclear, but it appears that he did not dispute Barbara's statement that he had first suggested that figure. Gordon also admitted that he had given Barbara the owner's manual to study, after the purchase agreement was completed, and that he had "probably" told Hill that the trailer would be locked and not open to inspection since they had agreed to buy it.

Wayne Beutler also testified at the hearing. He stated that he learned of the purchase order on December 1, looked it over, and told Gordon that $300 more would be required for the sale. Upon questioning by the administrative law judge, Beutler testified that purchase order forms were not always signed by an officer of the company. The specific questioning went as follows:

"Q. [I] want to show you Exhibit 2 [the purchase order], and down at the bottom it says, 'Not approved unless signed by an officer of the company,' or something of the type; is that correct?

"A. Um-hum.

"Q. Do you or John Beutler sign there?

"A. I would say most of the cases, maybe not all of the cases, or we at least initial them.

"Q. All right. What I'm showing you there, it's signed, it's signed evidently 'Burt Gordon.'

"A. Um-hum.

"Q. By Feather River Sales, is that correct?

"A. Um-hum.

"Q. Now, do your salesmen ordinarily do that, or is that reserved for you and John Beutler?

"A. It's hit and miss. Some of them are and some of them aren't."

The administrative hearing was held on March 29, 1976, and on April 20 the administrative law judge filed a proposed decision in which he included among his findings that Feather River allowed Gordon to represent himself as a responsible official, i.e., one who could set price and approve it. He also specifically found that the Scout trailer had been advertised for $4,450 (the backed-up price), and that Feather River was bound by its salesmen's actions. He did not find that Feather River had employed any fraud or deceit in the transaction.[4]

The order contained in the proposed decision, which decision was adopted by DMV, provided (1) for dismissal of the charge of violating section 11705, subdivision (a)(14), and (2) for the suspension of Feather River's license and special plates for a 30-day period, 20 days of that period to be stayed for one year on the condition that Feather River obey all laws (with particular emphasis to those relating to its activities as a DMV licensee) and that in the event it were determined by the director that any violation of the terms of probation had occurred, the stay would be set aside and the remaining 20-day portion of the suspension put into effect. The order further provided that upon satisfactory compliance with the one-year probation term, the stay would become permanent.

Feather River filed its petition for writ of mandamus two days prior to the effective date of the decision, contending that an abuse of discretion

[4]The finding of no fraud and deceit was in response to the also charged violation of section 11705, subdivision (a)(15), now section 11705, subdivision (a)(14), which provides for the imposition of discipline upon any DMV licensee who "Has caused any person to suffer any loss or damage by reason of any fraud or deceit practiced on him or fraudulent representations made to such person in the sale or purchase of a vehicle or parts or accessories thereof." We are not presently concerned with that charge, since the finding made with respect to it was in favor of Feather River.

had occurred in that the administrative decision was not supported by the findings on several grounds. First, it was urged that the only negotiations for purchase were conducted in a one-on-one setting between Hill and Gordon, and that one-on-one communications of that sort do not constitute advertising within the meaning of the Vehicle Code sections involved. Second, it was claimed that there was no specific finding that an untrue or misleading statement was made, or that any such statement was made or disseminated as part of a plan or scheme with the intent not to sell any vehicle so advertised at the advertised price. Feather River supported this latter claim by reference to the administrative finding that there was no fraud or deceit. Feather River further argued that even if it were held that the findings support the conclusion that section 11713, subdivision (a), was violated, the evidence is insufficient to support that finding since there was no evidence showing a " 'statement which is untrue or misleading and which is known or which by the exercise of reasonable care should be known to be untrue or misleading,' nor was there any evidence introduced to establish the existence of a statement made or disseminated . . . as part of the [previously mentioned plan or scheme]." Feather River last claimed that the finding that it had allowed Gordon "to represent himself as a responsible official, one who could set a price and approve it" was unsupported by the evidence.

After briefing by the parties, and a hearing on the matter, the court filed the following memorandum of intended decision:

"The Court agrees with the administrative finding that the 'Evidence does not establish . . . that respondent' (i.e., Feather River Trailer Sales Co., a corporation, which is the Petitioner in this proceeding) 'employed fraud or deceit in the transaction.' The Court finds that the weight of evidence is that at the time the salesman Gordon received the offer by Hill, the amount of that offer was the product of Hill's own determination, and was not the result of Gordon's solicitation and was below the advertised price for the trailer. The testimony at the administrative hearing was in conflict as to whether Gordon's words and acts, upon receipt of Hill's offer, indicated acceptance then and there, or indicated that Gordon would have to get final approval from his superiors. In any event, there is nothing in the testimony to indicate that, at that time, Gordon knew that anything he said was false, and the Administrative Judge so found. Vehicle Code 11713(a) mandates in its definition of a violation that at the time, a statement is made, the statement be false or misleading, and that the maker either knew this, or in exercise of reasonable care, the maker should have known it.

"The Court finds, by the weight of the evidence, that there was no statement of existing fact made by the salesman Gordon which was false or misleading, or which should have been known to him to be false or misleading, or which was made as a part of a plan or scheme not to sell the vehicle at its advertised price, which the Court finds was $4,995, and not the $4,800 which was offered by Hill.

"The Court therefore finds that there was no violation of Vehicle Code 11713(a) or of Vehicle Code 11713.1. A writ of mandate shall issue as prayed. Counsel for Petitioner shall prepare necessary papers."

The court subsequently entered findings of fact to the effect that an offer to purchase the trailer for $4,800 was made by Hill to Gordon; that the advertised price was $4,995; that Feather River declined to accept Hill's offer; that there was no refusal by Feather River to sell the trailer at the advertised price; that the testimony was in conflict as to the meaning of Gordon's words and conduct upon receipt of Hill's offer; that even if Gordon's words and conduct led the Hills to believe the offer had been accepted, the weight of the evidence fails to show that either Gordon or Feather·River made any statement which was untrue or misleading and which they knew to be such or which upon reasonable care should have been known to be such, or which was made as part of a plan or scheme to refuse to sell a vehicle at its advertised price. The court also found the administrative decision to contain no finding that any such statement was made and that the decision, which in fact found on absence of fraud or deceit on the part of Feather River "thereby, impliedly found that [Feather River] neither made, nor is chargeable as having made, [such a statement]."

From these findings, the court concluded that there had been no violation of Vehicle Code sections 11713, subdivision (a) and 11713.1, subdivision (c);[5] that there was no cause for discipline under section 11705, subdivision (a)(10), and that DMV abused its discretion in that the decision is unsupported by the findings and that no evidence was present to support such findings, had they been made.

Judgment was entered accordingly, and this appeal followed.

DMV contends that: (1) The administrative decision was not fatally defective because of the lack of a finding expressly stating that either Gordon or Feather River "made any statement which was untrue or misleading, and which was known or which by the exercise of reasonable

[5]See footnote 1, ante, page 236.

care should be known, to be untrue or misleading, or which was made a part of a plan or scheme not to sell the vehicle at the advertised price." (Veh. Code, § 11713, subd. (a));

(2) The trial court's determination that the findings were unsupported by the evidence completely ignores the uncontradicted evidence at the administrative hearing;

(3) The trial court erred in concluding that the express finding of an absence of fraud or deceit necessarily compel the conclusion that there had been no untrue or misleading statements within the meaning of Vehicle Code section 11713, subdivision (a); and

(4) The trial court's holding that one-on-one communications could not constitute advertising within the meaning of Vehicle Code section 11713, subdivision (a) (untrue or misleading statements) and section 11713.1, subdivision (e) (refusal to sell a vehicle at its advertised price) resulted from a misapprehension of the applicable law.

Our review of the record reveals that the trial court erred in its application of the law and that the department's contentions are sufficiently meritorious to require reversal of the judgment.

1. *Sufficiency of the Findings.*

It is not disputed by the parties that findings of fact made in administrative proceedings need not be made in the express language of the involved statutes. The standards for, and functions of, administrative findings were recently discussed by the Supreme Court in *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-517 [113 Cal.Rptr. 836, 522 P.2d 12]. In the context of a zoning decision, the Supreme Court held that Code of Civil Procedure section 1094.5 contains an implicit requirement that the administrative agency, whose decision may be reviewed under that statute, must include findings which "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.,* at p. 515) The functions served by such findings were emphasized by the court; it was stated that they facilitate orderly analysis by the administrative agency, allow the reviewing court to trace and examine that analysis, enable the parties to determine whether and on what bases to seek judicial review, and serve a public relations function of demonstrating that decision making in the administrative process is careful, reasonable, and equitable. (11 Cal.3d at pp. 516-517). Moreover, in *Topanga,* the Supreme Court specifically disapproved

appellate court cases which had placed an emphasis upon the need for findings framed in the exact language of the applicable legislation. (*Id.,* at p. 517, fn. 16.)

The *Topanga* test is met here. ▮▮▮ The administrative findings recite the circumstances of Hill's offer and its acceptance by Gordon. The circumstances include the initial offer by Hill, the calculation of the purchase price of $4,450 made by Gordon by backing up the transaction in order to obtain a figure which, inclusive of sales tax and license fees, would total $4,800. The findings also recite that Gordon gave Mrs. Hill the trailer manual with his accompanying comment, and Gordon's agreement that the trailer would remain locked until Hill could take it off the lot. The findings refer also to the preparation of the purchase order and Gordon's completion of that order by signing "on lines which indicated he had authority to act for the dealer and that the sale was approved." The findings go on to recite the repudiation of Gordon's agreement by Feather River's management. The administrative law judge made the specific findings that "On November 29, 1975, during the course of pre-sale negotiations and in a written purchase order completed pursuant to those negotiations, [Feather River] *advertised* a 1975 Mobile Scout Trailer, for sale at a total price of $4450.00 exclusive of sales tax, vehicle registration fees and finance charges. Respondent later refused to sell the vehicle at *the advertised* total price despite a specific request to do so." (Original italics.)

We are at a loss to determine just how those findings fail to form an adequate analytic bridge from the evidence to the administrative determinations of violations of Vehicle Code sections 11713, subdivision (a), and 11713.1, subdivision (e).

It is apparent from the foregoing that the untrue or misleading statements which were known or which should have been known to be such by the exercise of reasonable care were the representations that a completed deal had been made. (Veh. Code, § 11713, subd. (a).) Moreover, from this finding it is equally clear that there was a refusal to sell the trailer at the advertised (nee offered) price. (Veh. Code, § 11713.1, subd. (e).)

The trial court's reliance on the lack of more specific findings was misplaced and not in conformity with applicable law. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at pp. 515-517.)

*Sufficiency of the Evidence to Support the Findings.*

■ In an administrative proceeding, where undisputed facts point in a single direction, a reviewing court is not bound by inferences drawn by the trial court. (*Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1135 [95 Cal.Rptr. 566]; *David Kikkert & Associates, Inc.* v. *Shine* (1970) 6 Cal.App.3d 112, 116 [86 Cal.Rptr. 161].) DMV takes the position that the evidence presented herein was of just such character, and therefore the trial court was without power to reach an opposite conclusion. If the evidence was susceptible of such characterization, then it is immaterial whether the scope of review is that of substantial evidence or, as here, the independent judgment test. (*Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].)

■ The evidence before the administrative law judge indisputably showed that on November 29, 1975, Gordon allowed Mr. and Mrs. Hill to believe that they had purchased the Scout trailer for $4,801. Although Gordon testified that he told them he would submit the deal for approval, that statement must be read in light of his clarifying statement that he may not have so told them, or made it clear to them. This is especially true when viewed in connection with his conduct in giving Mrs. Hill the owner's manual and telling her to study it because it was her trailer now, and further, in light of his assurance to Mr. Hill that the trailer would be locked up since it had been purchased. Moreover, the record is equally undisputed on the fact that Gordon knew he had no authority to make such representations to the Hills. Both his testimony and that of Wayne Beutler are susceptible only of the conclusion of such knowledge with respect to the particular trailer here involved. The trial court's reliance on Gordon's testimony that he told the Hills the deal had to be submitted for approval would have been permissible had no further testimony been given by Gordon; but here, Gordon's further testimony utterly negated both the import and the legal significance of his initial statement.

Again, the evidence mandated the conclusion that an untrue or misleading representation had been made by Gordon which was known or which, upon reasonable care, should have been known to be untrue, to wit, the representation that the trailer had been purchased by the Hills. This constituted a violation of section 11713, subdivision (a). The

subsequent refusal of Feather River, through Beutler, to sell the trailer to the Hills at the price agreed upon between the Hills and Gordon constituted a violation of section 11713.1, subdivision (e).

2. *Finding of No Fraud or Deceit.*

The trial court emphasized the administrative finding that Feather River had not "employed fraud or deceit in the transaction;" from this it concluded that Feather River therefore could not have violated Vehicle Code section 11713, subdivision (a) by making "a statement which was untrue or misleading . . . ."

■ DMV concedes that the trial court correctly reasoned that the administrative finding barred the conclusion that the misleading statement in question was made as part of "a plan or scheme not to sell the vehicle at its advertised price;" and also, that the finding further precluded discipline based upon a statement "known to be untrue or misleading;" but, as DMV argues, there still remains the possibility that discipline could properly be imposed for the making or dissemination of a "statement which is untrue or misleading, and . . . which by the exercise of reasonable care should be known, to be untrue or misleading." (Veh. Code, § 11713, subd. (a).) In this respect, DMV argues that the trial court's conclusion was wrong; we agree.

We have already established that misleading statements were made: specifically, that Gordon was authorized to complete the sale and that the sale had occurred, or, in the words of the administrative findings, that Gordon had been permitted by Feather River to represent himself as a person who could "set a price and approve it." That this was untrue was amply shown by Beutler's refusal to honor the price and his testimony that Gordon had no authority to agree to a final sale. The question that remains is whether Feather River (which includes Gordon) should, in the exercise of reasonable care, have known that the representations were misleading. There is no question that Feather River may be subject to administrative discipline for the acts of the agents and its employees. (See *Garcia v. Martin* (1961) 192 Cal.App.2d 786, 790 [14 Cal.Rptr. 59]; *5501 Hollywood, Inc. v. Dept. Alc. Control* (1957) 155 Cal.App.2d 748, 753-754 [318 P.2d 820].) In making the argument that one can be guilty of making a misleading statement which, in the exercise of reasonable care would

have been known to be such, without acting with fraud or deceit, DMV. points to the amendment of section 11713, subdivision (a), in 1970, which specifically removed the previously included element of intent. (Stats. 1970, ch. 522, § 2, p. 1017.) The language which presently appears in the statute is based on Business and Profession Code section 17500, which, as enacted by Statutes 1941, chapter 63, section 1, prohibited untrue or misleading statements in connection with the sales of property or performance of services. That language had been held to prohibit both unintentional misrepresentations and intentional deceit. (*People* v. *Wahl* (1940) 39 Cal.App.2d Supp. 771, 773 [100 P.2d 550]; see *Audio Fidelity, Inc.* v. *High Fidelity Recordings, Inc.* (9th Cir. 1960) 283 F.2d 551, 555 [127 U.S.Pat.Q. 306].)

Feather River, in response, characterizes this argument as a fallacious syllogism in that it implies that fraud or deceit requires an actual intent to deceive. Feather River, relying on Professor Witkin, contends that the element referred to as "intent to deceive" in the context of the law of fraud means merely an intent to induce reliance. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 467, 482, pp. 2729, 2741.) Feather River's argument is misdirected. It is not the intent to deceive with which the portion of section 11713, subdivision (a), involved herein is concerned, rather, it is knowledge of the falsity of the representation. It is clear from the cases which have construed Business and Professions Code section 17500 that the section with which we are concerned deals both with misrepresentations that involve fraud and deceit, and with misrepresentations that do not. (See, e.g., *Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 875-876 [127 Cal.Rptr. 110, 544 P.2d 1310], and see cases cited therein.)

In concluding our discussion on this issue, we note also the fact that Feather River had been charged under Vehicle Code section 11705, subdivision (a)(14), which provides for imposition of discipline upon any license holder who "has caused any person to suffer any loss or damage by reason of any fraud or deceit practiced on him or fraudulent representations made to such person in the sale or purchase of a vehicle or parts or accessories thereof." (See fn. 4, *ante,* p. 240.) The administrative law judge's finding that no fraud or deceit had occurred is logically viewed as responsive to that allegation, rather than as bearing on the other sections, violations of which also had been charged against Feather River.

### 3. *One-on-one Advertising.*

As its final argument, DMV challenges the trial court's determination that the trailer had never been advertised for sale at the price of $4,800. The issue need not be belabored.

The term "advertised" as it is used in the Vehicle Code sections before us, is nowhere specifically defined in that code. Historically, however, the terms advertising and "advertisement" have been held to be broad enough to include oral representations made on a one-to-one basis. For example, in *Chern* v. *Bank of America, supra,* 15 Cal.3d 866, the Supreme Court held that quotations of an incorrect interest rate made over the telephone to prospective individual borrowers constituted false and misleading advertising within the meaning of Business and Professions Code section 17500 and could be enjoined pursuant to section 17535 of that code and section 3369, subdivision 2, of the Civil Code. (Pp. 870, 876.) Similarly, deceptive sales dialogues between door-to-door encyclopedia salesmen and prospective purchasers were held by the Supreme Court in, *People* v. *Superior Court* (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191], to have been properly enjoined under Business and Professions Code section 17535 as false and misleading advertising as that term is used in section 17500 of that code. (*Id.,* at pp. 286, 287-288.)

In two cases dealing with proscriptions of the Health and Safety Code against false and misleading advertising, oral representations made on a one-to-one basis have been similarly treated. In *People* v. *Schmitt* (1957) 155 Cal.App.2d 87 [317 P.2d 673], such oral representations were deemed adequate to support charges against a chiropractor of violation of former Health and Safety Code section 26286.5 and Business and Professions Code section 17500. (*Id.,* at p. 102.) In *People* v. *Galway* (1953) 120 Cal.App.2d 45 [260 P.2d 212], the convictions of Galway and another for conspiracy to commit a crime by advertising that a drug would have a favorable effect in the treatment of cancer in violation of former Health and Safety Code sections 26286.5 and 26295 were sustained where the advertisements were oral representations made to prospective "patients." (*Id.,* at pp. 46-49.)

The above-cited cases do not involve the Vehicle Code sections here involved, but refer to various other statutes dealing with regulation of business practices; however, the meaning and use there accorded these terms are dispositive. In those cases, one-on-one conversations were

consistently denominated advertising. The sections there involved (Bus. & Prof. Code, § 17500, and former Health & Saf. Code, § 26209, similar to present § 26002, and §§ 26286.5 and 26295, now covered by § 26463 of that code) may be relied upon for interpretation of the subject Vehicle Code sections. (See *Kendall-Brief Co.* v. *Superior Court* (1976) 60 Cal.App.3d 462, 466 [131 Cal.Rptr. 515].) The Vehicle Code sections, as well as the code sections applied in the cited cases, all deal with the regulation of "advertising." A prohibition against untrue or misleading advertising affords protection " 'against the probability or likelihood as well as the actuality of deception . . . .' " (*Chern* v. *Bank of America, supra,* 15 Cal.3d at p. 876.) The protection afforded by the sections with which we are concerned must reasonably be viewed as providing such protection.

■ We hold, therefore, that the trial court erred in concluding that the one-on-one discussions between plaintiffs and the Hills could not come within the statutory meaning of the term "advertising."

The judgment is reversed and the trial court is directed to enter judgment in favor of the director, Department of Motor Vehicles.

Paras, Acting P. J., and Evans, J., concurred.

A petition for a rehearing was denied September 18, 1979, and respondent's petition for a hearing by the Supreme Court was denied November 8, 1979.