[L.A. No. 31113. Apr. 10, 1980.]

INTERSTATE BRANDS, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Appellant.

**COUNSEL**

Evelle J. Younger and George Deukmejian, Attorneys General, and Victor D. Sonenberg, Deputy Attorney General, for Defendant and Appellant.

Mitchell, Silberberg & Knupp, Harry J. Keaton and William L. Cole for Plaintiff and Respondent.

Cox, Castle & Nicholson, George M. Cox, John S. Miller, Jr., David A. Garcia, Dale L. Brodsky and Marjorie E. Cox as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**MANUEL, J.**—The California Unemployment Insurance Appeals Board (Board) appeals from a judgment ordering the issuance of a peremptory writ of mandate directing it to set aside its order granting

unemployment insurance benefits to certain employees of plaintiff Interstate Brands, to strike all pertinent charges made to plaintiff's reserve account (Unemp. Ins. Code, § 1025 et seq.),[1] and to undertake any necessary further proceedings. We affirm.

The facts, although quite complex and subject to a variety of conflicting inferences, are basically undisputed. For our purposes they may be briefly summarized as follows: In 1972, plaintiff and several other major wholesale bakers of northern and southern California, pursuant to a long-standing practice, entered into multiemployer collective bargaining negotiations with certain labor unions representing their employees—the Bakery & Confectionary Workers International Union (B & C) in the south and the Teamsters Union in the north. In November of the same year, it appearing that these negotiations had reached an impasse over a work-week issue, the affected unions—first the Teamsters in the north, then a week later B & C in the south—struck against one member of the bakery bargaining group, ITT Continental Bakery. Plaintiff Interstate Brands, having previously informed the affected unions that it would consider a strike against any member of the employer group to be a strike against it as well, proceeded to lock out its employees—first in the north, then in the south—as each of the affected unions struck. The strike and lockout persisted for nearly a month in the south; in the north more than two months elapsed before a settlement was reached.

Various of plaintiff's employees made application for unemployment insurance benefits. The referee, applying the so-called "volitional test" (see generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, §§ 68-69, pp. 690-693), determined that such benefits were precluded by the provisions of section 1262. That section states: "An individual is not eligible for unemployment compensation benefits, and no such benefits shall be payable to him, if he left his work because of a trade dispute. Such individual shall remain ineligible for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment in which he was employed." An appeal was taken to the Board (§ 1336), which reversed the decision of the referee, concluding on the basis of the record below that the applicant employees were not "voluntarily unemployed" and thus were eligible for benefits.

---

[1]Unless otherwise indicated, all section references hereafter shall be to the Unemployment Insurance Code.

Plaintiff sought judicial review by means of a petition for mandate pursuant to section 1094.5 of the Code of Civil Procedure. The trial court, concluding that the decision of the Board had substantially affected plaintiff's fundamental, vested rights (see *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242]), proceeded to exercise its independent judgment on the evidence and to determine whether the Board's findings were supported by the weight of the evidence. Concluding that they were not, it ordered issuance of the writ of mandate which is the subject of the instant appeal. In essence the court's judgment, which we here review, ordered reinstatement of the referee's decision precluding the award of benefits.

■■ ■■■ The Board contends that the trial court erred in its review of the record before it by exercising its independent judgment on the evidence rather than limiting itself to an assessment of its substantiality in light of the whole record. (See Code Civ. Proc., § 1094.5, subd. (c).)[2] It is urged in essence that our 1971 *Bixby* decision had the effect of altering the basic standard for determining under what circumstances independent review was appropriate. Prior to that decision, it is pointed out, independent review was authorized in all cases in which a "vested right" was affected by the administrative decision sought to be reviewed (see generally *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 914-915 [80 Cal.Rptr. 89, 458 P.2d 33], and cases there cited). *Bixby*, however—so the argument continues

---

[2]Although the facts, as we have indicated, were largely undisputed, they cannot be said to "all point one way" on the basic substantive issue before the court—i.e., whether plaintiff's lockout, in view of all of the circumstances, was a reasonably foreseeable consequence of the selective strikes called by the affected unions. (See text following fn. 7, *post.*) Whereas it has been held that a trial court may not set aside an administrative determination as unsupported by the evidence—and that therefore the scope of factual review adopted by it is irrelevant—when that determination is supported by undisputed facts (see *David Kikkert & Associates, Inc.* v. *Shine* (1970) 6 Cal.App.3d 112, 116 [86 Cal.Rptr. 161]), this rule is inapplicable when the facts, although undisputed, are subject to conflicting inferences with respect to the crucial issue. In such a case the trial court, if authorized as it is here to exercise its independent judgment on the evidence, may draw its own inferences from the evidence in the record, and if the inferences so drawn are supported by substantial evidence, they are binding on the reviewing court. (See *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134-1135 [95 Cal.Rptr. 566]; *Rowe* v. *Hansen* (1974) 41 Cal.App.3d 512, 518-520 [116 Cal.Rptr. 16]; see also *Rabago* v. *Unemployment Ins. Appeals Bd.* (1978) 84 Cal.App.3d 200, 211-212 [148 Cal.Rptr. 499]; *Davis* v. *Unemployment Ins. Appeals Bd.* (1974) 43 Cal.App.3d 71, 75-76 [117 Cal.Rptr. 463]; *Young* v. *Unemployment Ins. Appeals Bd.* (1974) 37 Cal.App.3d 606, 610 [112 Cal.Rptr. 460]; cf. *Feather River Trailer Sales, Inc.* v. *Sillas* (1979) 96 Cal.App.3d 234, 245-246 [158 Cal.Rptr. 26]; *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].)

—added a separate new requirement for independent review, i.e., that the right be "fundamental" (*Bixby, supra,* at pp. 143-147). Thus, the Board urges, the fact that an affected right is "vested" in the pre-*Bixby* sense is no longer sufficient in and of itself to warrant independent review by the trial court; it must also appear that the right is "fundamental." Because the courts, in determining whether an affected right rises to this level, "do not alone weigh the economic aspect of it, but the effect in human terms and the importance of it to the individual in the life situation" (*Bixby, supra,* at p. 144), and because the right here in question—i.e., plaintiff Interstate Brands' right to be free from an erroneous charge against its unemployment insurance reserve account (§ 1026)—is, it is urged, of relatively minor consequence when viewed against this standard,[3] the Board concludes that this is not a proper case for the exercise of independent judgment on the evidence by the trial court.

We do not agree. In our view this rather mechanistic line of reasoning betrays a fundamental misapprehension of our *Bixby* opinion and the principles underlying it. For reasons which we set forth below, we hold that the trial court, in its review of the record in this case, properly exercised its independent judgment on the evidence.

Before undertaking an assessment of the effect of our *Bixby* decision in the area which here concerns us, we briefly examine the state of the law governing the scope of judicial review of Board decisions which had emerged prior to *Bixby*. In *Thomas* v. *California Emp. Stab. Com.* (1952) 39 Cal.2d 501 [247 P.2d 561], we had held that a *claimant* for unemployment insurance benefits who, having been declared *ineligible* for such benefits by the Board, sought judicial review of this determination by mandate, was entitled to an independent review of the evidence. We there stated: "Any person deprived of a property right by [a statutory agency with statewide jurisdiction] is entitled to a limited trial de novo in the superior court. (*Laisne* v. *State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457]; *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20]; *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304].) In our opinion the benefits provided for by the Unemployment Insurance Act are property rights within the mean-

---

[3]An order of eligibility for benefits has no immediate effect on the employer. It may, however, affect its future rate of contribution to the unemployment fund. (See §§ 977, 978.)

ing of the term as used in the cases requiring a trial de novo." (39 Cal.2d at p. 504.)

Our *Thomas* decision, however, did not explicitly decide whether an *employer*, like a claimant, was entitled to an independent judicial review of the evidence following a Board determination of *eligibility* for benefits. This question was put to rest the following year in the case of *Chrysler Corp. v. California Emp. etc. Com.* (1953) 116 Cal.App.2d 8 [253 P.2d 68] (hg. den.). "[I]t seems clear," the court there held, "that under the procedure established by the Unemployment Insurance Act for contributions by employers to the unemployment fund, petitioner has a direct pecuniary interest in any payments made to a claimant which may be charged against his reserve account. As an inducement for uninterrupted business operations and to minimize labor turnover, the act provides for a rate of contributions by an employer based upon the ratio of the employer's average base payroll to the amount of revenue with which he is credited on the books of the Employment Stabilization Commission. This is the so-called merit rating provision of the statute. . . . Any final decision of the administrative tribunal which awards benefits to a claimant has the effect of depleting an employer's reserve account, and may thereby adversely affect his rate of contributions to the fund during a particular rating period. It is of direct financial advantage to an employer to prevent inroads on his reserve account chargeable to benefit payments in order to protect his merit rating or to become eligible for a reduced rate of contribution. The imposition of an erroneous charge against an employer's account, with the attendant consequence of his having to pay an increased contribution, amounts to a wrongful deprivation of property. The petitioner, as a contributing employer, has a vital interest in the status or condition of its reserve account and *since the administrative decision here in question may affect its financial responsibility to the unemployment fund, a sufficient right of property is involved to entitle it to a limited trial de novo as to the propriety of the charges made against its account.*" (116 Cal.App.2d at pp. 14-15, italics added.)

In the 18 years which elapsed between *Chrysler* and our 1971 *Bixby* decision, the rule stated in *Chrysler* was uniformly followed in cases involving employers who sought judicial review of adverse eligibility decisions by the Board. (See, e.g., *Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 269 [3 Cal.Rptr. 37]; *Sears, Roebuck & Co. v. Walls* (1960) 178 Cal.App.2d 284, 288 [2 Cal.Rptr. 847]; *General Motors Corp. v. Cal. Unemploy-*

*ment Ins. Appeals Bd.* (1967) 253 Cal.App.2d 540, 545 [61 Cal.Rptr. 483]; see also *Tieberg* v. *Superior Court* (1966) 243 Cal.App.2d 277, 283-284 [52 Cal.Rptr. 33].)

The essence of the Board's position is that our *Bixby* decision had the effect of narrowing and restricting the *Chrysler* rule—permitting independent review of the evidence when the employer (rather than the employee) seeks judicial review of an adverse eligibility determination *only* in those cases in which the employer can show that the right affected thereby is not only "vested" in the *Chrysler* sense but has a demonstrably significant "effect...in human terms" and "importance ...in the life situation" (*Bixby, supra,* at p. 144). This, it is suggested, would appear only in such cases where, for example, it could be shown that an increase in the contribution rate would operate to drive the particular employer out of business.

Our disagreement with this proposition is based upon several grounds. Most apparent of these is that *Bixby* itself cites with approval not only the *Thomas* case (judicial review sought by *employee*) but also the then most recent example of the *Chrysler* line (judicial review sought by *employer*)—i.e., *General Motors Corp.* v. *Cal. Unemployment Ins. Appeals Bd., supra,* 253 Cal.App.2d 250. (4 Cal.3d at p. 143, fns. 9 and 10.) Also significant, we think, is the fact that post-*Bixby* cases involving judicial review of eligibility determinations by the Board have continued to state a uniform rule with respect to scope of review;[4] two of these have involved mandate sought by the *employer* and have expressly held that independent review remains the rule in such circumstances (*Kilpatrick's Bakeries, Inc.* v. *Unemployment Ins. Appeals Bd.* (1978) 77 Cal.App.3d 539 [143 Cal.Rptr. 664] (hg. den.); *Windigo Mills* v. *Unemployment Ins. Appeals Bd.* (1979) 92 Cal.App.3d 586, 599 [155 Cal.Rptr. 63] (hg. den.)). A more essential basis for our con-

---

[4]In *Lacy* v. *California Unemployment Ins. Appeals Bd., supra,* 17 Cal.App.3d 1128, a case decided approximately three months after *Bixby,* the court said: "In reviewing decisions *granting or denying* unemployment insurance benefits, the superior court exercises its independent judgment on the evidence and inquires whether the administrative agency's findings are supported by the weight of the evidence." (*Id.,* at p. 1132, italics added.) In *King* v. *California Unemployment Ins. Appeals Bd.* (1972) 25 Cal.App.3d 199 [101 Cal.Rptr. 660], the court, after stating a similar rule, cited two cases: *Thomas* (the leading case, involving *employee*-initiated judicial review) and *Sears, Roebuck & Co.* v. *Walls, supra,* 178 Cal.App.2d 284 (a case in the *Chrysler* line involving *employer*-initiated judicial review). (*Id.,* at p. 203; see also *Agnone* v. *Hansen* (1974) 41 Cal.App.3d 524, 527 [116 Cal.Rptr. 122]; *Young* v. *Unemployment Ins. Appeals Bd., supra,* 37 Cal.App.3d 606, 609.)

clusion than these, however, appears from an examination of the *Bixby* case itself. It is to this matter that we now turn.

In *Bixby* v. *Pierno, supra,* certain minority stockholders sought review by mandate of a decision of the Commissioner of Corporations (commissioner) approving a recapitalization plan designed to insure continuity of ownership in a family-owned corporation. The minority objected to the plan on the ground that its true purpose was to benefit the majority stockholders by providing them with nonvoting stock which they could sell without relinquishing voting control, thereby perpetuating existing management policies. They also questioned the values set by the plan for new stocks to be issued thereunder, urging that tax problems for stockholders selling preferred shares would result. After a full hearing the commissioner concluded that the plan was fair, just, and equitable, setting forth several findings in support of this conclusion. (See 4 Cal.3d at p. 136.) The plan was therefore approved. In the subsequent mandate proceeding the trial court determined that the commissioner's findings and conclusions were supported by substantial evidence and did not constitute an abuse of discretion. The writ was denied.

On appeal this court, after a searching examination of the question of the proper scope of judicial review in proceedings brought pursuant to Code of Civil Procedure section 1094.5, concluded in essence that "an administrative decision or *class of decisions* [which] substantially affects fundamental vested rights" (4 Cal.3d at p. 144, italics added) was entitled to independent review by the trial court, whereas all other decisions were to be reviewed on a substantial evidence basis. Turning to the case there before us, we held that the latter standard of review was applicable. "The minority shareholders," we observed "do not allege any deprivation of their right to a livelihood *or a deprivation of their property.*" (*Id.,* at p. 147, italics added.) Under the corporate articles and bylaws, we pointed out, as well as under applicable statutory law, a recapitalization plan adopted by specified majorities of the directors and shareholders was valid unless it were concluded by the commissioner to be not fair, just, or equitable to all security holders affected. "If the commissioner reasonably finds that the plan is fair, just and equitable, and, additionally, that it has received the approval of the required majorities of directors and shareholders, the minority suffer no deprivation of rights, vested or otherwise, by permitting the plan to take effect. Under these circumstances, the minority have received precisely the rights

to which their shareholders' contract entitles them, as well as the statutory right to a decision by the commissioner that the plan is fair, just and equitable." (*Id.*, at p. 148.)

We also noted that two previous Court of Appeal decisions had held that disapproval by the commissioner of a recapitalization plan did not affect vested rights. "A fortiori," we concluded, "a decision of the commissioner in the present case approving a recapitalization plan would not affect any vested rights." (*Id.*, at p. 148.)

As the foregoing summary demonstrates, we believe, our concern in the *Bixby* case was not directed toward restricting or withdrawing the availability of independent review in "decision[s] or class[es] of decisions" as to which such availability had been previously established. Rather our concern was directed toward providing a doctrinal basis through which such review could be extended to "decision[s] or class[es] of decisions" which, although not involving vested property rights in the traditional sense, nevertheless had an impact on the individual "sufficiently vital...to compel a full and independent review" by the court.[5] (*Id.*, at p. 144.) It was in this spirit, then, that we said: "In determining whether the right is fundamental the courts do not *alone* weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation." (*Id.*, italics added.) In assessing the right there before us, however, we found *neither* an economic dimension of the kind theretofore considered requisite to independent review *nor* a human dimension of the type which we sought in our opinion to emphasize. (See especially 4 Cal.3d at pp. 141-143.) Accordingly we approved the trial court's use of the substantial evidence test and affirmed the judgment.

Cases subsequent to *Bixby* have, of course, had occasion to apply the broadened standard there established in order to authorize independent

---

[5]The relationship between "vestedness" in the traditional sense and "fundamentalness" in the *Bixby* sense is illuminated by a little-noted passage of the opinion which states: "[I]n determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is 'vested,' that is, already possessed by the individual." (4 Cal.3d at p. 146.) Thus it could truly be said that the search for "vestedness" and the search for "fundamentalness" are one and the same. The ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power. (See and cf. *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34-45 [112 Cal.Rptr. 805, 520 P.2d 29].)

judicial review in circumstances where it might well not have been available under former standards. (See, e.g., *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823-825 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Dickey v. Retirement Board* (1976) 16 Cal.3d 745, 748-751 [129 Cal.Rptr. 289, 548 P.2d 689]; *Harlow v. Carleson* (1976) 16 Cal.3d 731, 735-737 [129 Cal.Rptr. 298, 548 P.2d 698]; *Strumsky v. San Diego County Employees Retirement Assn., supra,* 11 Cal.3d 28, 45-46; *Kerrigan v. Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43 [154 Cal.Rptr. 29] (hg. den.).) None, however, has suggested that the application of that standard should result in withdrawing independent review from a "decision or class of decisions" previously entitled to such review. Indeed, we intimated to the contrary when we, in the above-cited *Strumsky* case, restated the *Bixby* rule as follows: "The essence to be distilled is this: When an administrative decision affects a right which has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect *or* its 'effect . . . in human terms and the importance . . . to the individual in the life situation,' then a full and independent *judicial* review of that decision is indicated. . . ." (*Strumsky, supra,* at p. 34, first italics added.) Thus, we suggested, a right may be deemed fundamental within the meaning of *Bixby* on either or both of two bases: (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect. Rights which qualify on the first basis, we think, must include those which were considered sufficient to invoke independent review under pre-*Bixby* law.[6]

In holding that plaintiff's right to be free from erroneous charges to its unemployment insurance reserve account is a fundamental vested right within the meaning of our *Bixby* decision—and that therefore it is entitled to independent judicial review of the evidence when a decision of the Board affects that right—we should not be understood to espouse a principle of necessary reciprocity between the right of an applicant to

[6]Our observation in *Bixby* that this court, "[i]n analyzing the fundamental nature of the right asserted, [has manifested] slighter sensitivity to the preservation of purely economic privileges" (*Bixby, supra,* at p. 145) was a statement of historical fact, illustrated by the cases there cited. We have continued since *Bixby,* and will doubtless continue in the future, to remain especially responsive to the human as opposed to the purely economic dimension of rights affected by administrative action. This does not mean, however, that rights whose most visible dimension is the economic one will for that reason remain in all cases something less than "fundamental" within the meaning of *Bixby.* (See *Transcentury Properties, Inc. v. State of California* (1974) 41 Cal. App.3d 835 [116 Cal.Rptr. 487]; cf. *Mountain Defense League v. Board of Supervisors* (1977) 65 Cal.App.3d 723, 730 [135 Cal.Rptr. 588].)

benefits and the right of the employer. ■ "[A] party has no standing to assert that an independent judgment review rather than a substantial evidence review is required unless *it* possesses a fundamental vested right *on its own behalf* which was involved in an administrative agency's action." (*Sierra Club* v. *California Coastal Zone Conservation Com.* (1976) 58 Cal.App.3d 149, 155-156 [129 Cal.Rptr. 743], italics added; see also *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23, fn. 9 at p. 23 [112 Cal.Rptr. 872].)

■ We ground our conclusion on the determination that plaintiff's affected right is, and has long been held to be, of sufficient significance to it to require independent judicial review of the evidence before the administrative body. It is to be emphasized that plaintiff is required by law to make contributions to the unemployment fund (§ 976); that the rate of those contributions, expressed as a percentage of average base payroll, is based upon the ratio between its average base payroll and the net balance in its reserve account (§§ 977, 978); and that, as the *Chrysler* court stated, "[a]ny final decision of the administrative tribunal which awards benefits to a claimant has the effect of depleting an employer's reserve account . . . ." (116 Cal.App.2d at p. 14.) It is manifest that any employer—especially in circumstances such as those here before us, where the question of eligibility relates to the entire work force of the employer—has a vital and significant interest at stake in any proceedings concerning the award or denial of benefits. We hold and reaffirm that that interest is sufficient to require independent judicial examination of the factual bases of an administrative determination of eligibility.[7]

---

[7]The element of enforced contribution in our view sets this case apart from those cases, relied upon by the Board, which involve a business's compliance with, and incidental economic burdens imposed by, reasonable governmental rules and regulations affecting the conduct of its business. (See *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293, 305 [130 Cal.Rptr. 814]; see also *Northern Inyo Hosp.* v. *Fair Emp. Practice Com., supra,* 38 Cal.App.3d 14, 23.)

Also distinguishable, although for an entirely different reason, is the case of *Lorco Properties, Inc.* v. *Department of Benefit Payments* (1976) 57 Cal.App.3d 809 [129 Cal.Rptr. 312], where it was held that the provisions of section 1029 (providing for the automatic cancellation of an employer's reserve account after a failure to pay wages for three years) did not violate procedural due process requirements. Although the court in that case uttered certain general language concerning the significance of the property interest at stake in an employer's reserve account, its decision was clearly grounded in quite different considerations. "The procedural requirements of notice and hearing," the court noted, "are inapplicable to statutes specifically authorizing a mechanical or administrative procedure such as cancellation of the reserve after three years of dormancy; this action does not evoke discretionary authority." (57 Cal.App.3d at p. 814.) (Cf. *Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-613 [156 Cal.Rptr. 718, 596 P.2d 1134].)

For the reasons above stated, we conclude that the trial court properly exercised its independent judgment on the evidence before the Board. ▇ Applying the standard announced by us in *McKinley* v. *California Emp. etc. Com.* (1949) 34 Cal.2d 239 [209 P.2d 602] and *Gardner* v. *State of California* (1959) 53 Cal.2d 23 [346 P.2d 193] with respect to the proper interpretation of section 1262, it concluded in essence, upon weighing the evidence and drawing its own inferences therefrom (see fn. 2, *ante*), that it was reasonably foreseeable that the selective strike here involved might result in a retaliatory lockout by other members of the multiemployer bargaining group, and that therefore "their consequent unemployment would, under the currently established rule, be regarded as voluntary and thus a bar to benefits." (*Gardner, supra,* at p. 27.) As the Board concedes, this conclusion and the findings made in support of it are clearly supported by substantial evidence in the record and therefore must be sustained on appeal. (See *Harlow* v. *Carleson, supra,* 16 Cal.3d 731, 739; *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143, fn. 10; *Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 915, and cases there cited.)

The judgment is affirmed.

Tobriner, Acting C. J., Richardson, J., Roth, J.,* and Klein, J.,* concurred.

**CLARK, J.,** Concurring.—Prior to the recent decision in *Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579], it was held that because article VI, section 1 of our state Constitution vested judicial power in the courts, a trial court reviewing an administrative decision affecting vested fundamental rights was required to exercise *independent judgment* on the evidence unless the Constitution vested limited judicial power in the agency. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-46 [112 Cal.Rptr. 805, 520 P.2d 29].) If the agency's decision did not affect a vested fundamental right or if the Constitution had vested the agency with judicial power, the trial court's inquiry was limited to the customary test for determining whether the agency findings are supported by *substantial evidence* in light of the whole record. (*Id.,* at pp. 44-45.)

---

*Assigned by the Acting Chairperson of the Judicial Council.

In *Tex-Cal Land Management, Inc.* we held that the Legislature could properly provide for substantial evidence review of a statewide agency "whether or not the California Constitution provides for that agency's exercising 'judicial power.'" (24 Cal.3d at pp. 342-346.) By upholding the legislative power to establish substantial evidence review, we rejected the constitutional basis for the independent judgment rule.[1]

Code of Civil Procedure section 1094.5 provides for both substantial evidence and independent judgment review, leaving the choice of standard to the courts. (*Id.*) Under the statutory authorization, we must determine through "judicially fashioned rules of procedure or in interpretation of section 1094.5" (24 Cal.3d at p. 345) when independent judgment review is warranted.

The existing test for independent judgment review—vested fundamental right—was based on the asserted constitutional limitation on exercise of the judicial power. Since the asserted constitutional limitation has been rejected, the test of vested fundamental right should no longer be controlling. Rather, in fashioning our rule for independent judgment review we should consider not only the rights involved but also the beneficial purposes of administrative adjudication. They include special expertise, simplified procedure permitting economical and speedy determination and the tribunals' often unique abilities—due to staffing, experience, and procedure—to operate as policy-making bodies implementing legislative will. (Jaffe, Judicial Control of Administrative Action (1965) pp. 25-26; cf. 1 Davis, Administrative Law Treatise (2d ed. 1978) § 2.13.) We must weigh any impairment of those beneficial purposes resulting from independent judgment review together with the right involved in determining whether to adhere to independent review as a judicial rule.

However, the instant case is not a proper vehicle to determine whether substantial evidence review is warranted notwithstanding the contentions as to vested fundamental rights. The judgment in the instant case was entered prior to our *Tex-Cal Land Management Inc.* decision, and the parties have not briefed the issue whether our rejection of the constitutional basis of the independent judgment rule

---

[1]While dissenting in *Tex-Cal Land Management Inc.* on an issue not relevant here, I expressly concurred in the majority's conclusions as to the scope of review. (24 Cal.3d at p. 356.)

warrants our making an exception to the vested-fundamental-right basis for such review.

I concur in the majority opinion insofar as it holds that, under the test of vested fundamental right, independent judgment review was appropriate in the instant case.

Newman, J., concurred.